The State v. Stackhouse.

justice, judgment was given for the plaintiff and against the defendant, who appealed to the district court. Trial by the court at the May Term, 1879, and judgment for the defendant for $39.40. New trial denied, and *Axford* brings the case here.

*W. C. Huffman,* for plaintiff in error.

*Clogston & Martin,* for defendant in error.

THE STATE OF KANSAS V. WILLIAM STACKHOUSE.

1. MURDER IN THE FIRST DEGREE; *Sufficient Indictment.* An indictment which charges a deliberate and premeditated intent to kill and murder; that with this intent the defendant made a deliberate and premeditated assault; that this assault was with a rifle or gun, leaden balls, etc.; that by this assault he gave to deceased a mortal wound, of which wound deceased then and there died, sufficiently charges the crime of murder in the first degree.

2. MURDER TRIAL; *Competent Evidence.* Upon the trial of a murder case, a witness was permitted to testify over the objections of defendant as to threats and expressions of dislike made by defendant towards the deceased, and another was asked upon what terms the defendant and deceased were, whether friendly or unfriendly; *held,* no error.

3. TRIAL IN CRIMINAL CASE; *Separation of Jury; Admonition.* A court, at every separation of the jury and at each adjournment in a criminal trial, should give the statutory admonition; but where it appears that at the first adjournment, and before any separation of the jury was had, the court had given this admonition and had stated to the jury that the duty thus declared rested upon them whenever out of the jury-box, until the close of the trial, and that the admonition was duly given at each adjournment thereafter, and the record discloses a trial otherwise fair and impartial, the judgment will not be reversed simply because during the sessions of the court several recesses, of from three to five minutes duration, are shown to have taken place without this admonition being given as preliminary thereto; and this, although the

record is silent as to what took place during such recesses, and as to whether any of the jurors left the court room or not.

4. The testimony briefly reviewed, and held sufficient to sustain the verdict.

5. MOTION, *Hearing of; Practice.* On the hearing of a motion the court may permit a witness to be called before it, and examined and cross-examined orally in its presence, and is not compelled to receive affidavits alone.

*Appeal from Ellis District Court.*

INDICTMENT for murder in the first degree, charging *William Stackhouse* with the felonious killing of Samuel P. Kipple, at the county of Ellis, on or about the 28th day of May, 1879. At the September Term, 1879, of the district court, *Stackhouse* was found guilty of murder in the second degree, and sentenced to confinement at hard labor in the state penitentiary for a term of twelve years. He appeals to this court. The opinion contains a sufficient statement of the facts.

*A. D. Gilkeson,* and *Mohler & Cunningham,* for appellant:

1. The indictment does not state facts sufficient to constitute the crime of murder or manslaughter in any of its degrees. It fails to allege a killing and murdering, and charges only an assault with intent to kill and murder. This is not sufficient—at least, not as a charge of murder in either degree. (1 Whar. Cr. Law, § 399; 1 Kas. 365; 15 id. 302; 21 id. 38; 23 id. 244; Bishop on Stat. Cr., §§ 372, 468–477; 9 Cent. L. J. 386; 20 Mo. 58; 30 id. 376; 2 Bishop on Cr. Pro., § 536.)

2. The verdict is not sustained by and is contrary to the evidence, and is contrary to law. The facts proven and construed most strongly against the appellant do not establish as against him the crime of murder in the second degree, of which he was convicted. If he can be, under this proof, guilty of anything, it is not above manslaughter in some one of its degrees. A person can be convicted of no crime of which the testimony does not prove him guilty. Indeed, some courts have gone to the extreme length—and we think justly—of holding that if a person is convicted of man-

slaughter, and the testimony should show that he is guilty of murder, the verdict must be set aside, as murder and manslaughter are distinct felonies. By no forced construction even can it be held that the testimony in this case proves the crime of murder in the second degree.

The verdict is contrary to law, for the reason that it is in excess of the charge in the indictment: that is, if appellant's position be tenable — that the indictment, if it charges any crime, does not charge anything more than an assault with intent to kill, or perhaps, at most, manslaughter in some one of its degrees. (46 Wis. 516; 35 id. 315; 45 id. 86; 50 N. Y. 598; 66 Mo. 13, 148; 68 id. 315.)

3. The court admitted illegal testimony over the objections of appellant, particularly in permitting witnesses to give their *judgment* and *opinion* as to whether the deceased and the appellant were or were not on friendly terms prior to the homicide. (1 Greenl. Ev., §§ 440, 440a, 441; 3 id. § 15.)

4. The court misdirected the jury on material matters of law, particularly in the instructions given in ¶¶ 8, 27, 31, 33, 37 and 45 of the charge. The thirty-first paragraph is as follows:

"If you shall find the facts to be not as stated in the first proposition, but as stated in the one marked 'Second,' that is, that the defendant intended to kill deceased, or knew of such intent on the part of one of the others, and that in pursuance of such intent the deceased was shot and killed either by defendant or such other, then it follows as a legal proposition that the defendant is guilty of murder."

This instruction is not good law. It is misleading. It either says too much, or not enough. Let us suppose a case within this instruction. Appellant had the intention to kill deceased. Charles Stackhouse killed him. Then, according to this instruction, appellant is guilty of murder. Again: Charles Stackhouse intended to kill deceased. The appellant knew of this intention. Charles Stackhouse did kill the deceased; therefore, according to this instruction, appellant is guilty of murder. "The intent and the act must both concur to constitute the crime." (3 Greenl. Ev., § 13.)

5. The jury in this case, after being impanneled and sworn, and after having heard testimony in this case, were permitted to separate without being admonished by the court, to the prejudice of the appellant. The record shows that the jury were permitted to separate eight several times without being admonished. This was error. (Cr. Code, § 235; 18 Kas. 16.)

There was no showing upon the part of the prosecution "that the rights of the defendant were not prejudiced." This objection made by appellant is not a "technical error" nor a "technical defect." If there had been a showing upon the part of the state that the rights of the appellant were not prejudiced by such separation, then this would be an "exception which did not affect the substantial rights of the parties." In the absence of such showing, prejudice will be presumed. (18 Kas. 16; 1 id. 340, 351; 1 Tex. Ct. App. 248; 10 Yerg. 241.)

The record shows three separations of the jury — two adjournments and one recess — after the jury were charged. At each of these adjournments the jury were admonished; at recess they were not.

*Quære:* Can the jury be permitted to separate at all after being charged? We think not. (Cr. Code, §§ 208, 227, 235, 236, 237; Civil Code, §§ 278, 279.)

6. A reversal of the judgment is claimed for the preadjudication, prejudice and misconduct, by and upon the part of the juror C. A. Faxon. (64 Mo. 358, 362–4, and cases cited.)

*D. C. Nellis*, county attorney, for The State:

The indictment charges all the facts necessary to allege a murdering. The facts, when stated correctly and not in technical terms merely, are all that is required by our code, in an indictment. (1 Kas. 350; 15 id. 302; Cr. Pro., § 110; 2 Ohio St. 563; 10 id. 599.)

The verdict in this case is sustained by the evidence. Nearly all the testimony bears upon the question, who did

the shooting? Whether William or Charles Stackhouse did the shooting, they would be equally guilty, as both went to the place of murder armed with deadly weapons, with unlawful intent, knowing that Kipple was there.

In reference to the alleged error of the court in allowing the jury to separate without admonishing them, the record shows that the court, at the first adjournment after the jury were impanneled, admonished them properly that "at all times through this trial, when this case is adjourned, and you may be out of your jury-box," etc. Also, see remarks of the court. (Record, p. 785, *et seq.*)

The juror Faxon, by his own evidence, and the oral examination of Goodall, is shown to be an unprejudiced juror, and never to have expressed an opinion in this case as to the guilt or innocence of the defendant. On the authority of *The State v. Roy*, 2 Kas. 405, even if he had heard a detailed statement of the circumstances of the killing, yet, having never formed an opinion thereon, he was not disqualified.

The opinion of the court was delivered by

BREWER, J.: In the court below, the appellant, William Stackhouse, being jointly indicted with his brother Charles, was placed upon his separate trial for the crime of murder in the first degree. Upon the first trial the jury failed to agree, and upon the second trial, had at an adjourned session of the same term, the jury found the appellant guilty of murder in the second degree. He made motions for a new trial, and in arrest of judgment, which motions being severally overruled by the court, he was sentenced to confinement at hard labor in the penitentiary of the state for a term of twelve years, from which sentence and judgment he appeals to this court.

The first error alleged is, the overruling of his motion to quash the indictment. Within repeated rulings of this court the indictment must be adjudged sufficient. It charges a deliberate and premeditated intent to kill and murder; that with this intent the defendants made a deliberate and premeditated assault; that this assault was with a rifle, or gun,

29—24 KAS.

and leaden balls, etc.; that by this assault they gave to deceased a mortal wound, of which wound he then and there died. Now here are all the elements of the crime: the assault, the killing, the intent to kill, and the deliberate and premeditated intent. The ruling of the court upon the motion to quash was correct. (*Smith* v. *The State*, 1 Kas. 365; *The State* v. *Potter*, 15 Kas. 302; *The State* v. *Brown*, 21 Kas. 38.)

A second allegation of error is, that the verdict was against the evidence. This also must be overruled. The record is very voluminous, filling two bound volumes of some 800 pages. We cannot, therefore, notice the various matters of testimony. These things, however, are undisputed: The deceased had been living upon a tract of land for two years or more, claiming it as his residence and intending to acquire title to it from the government. In March, 1879, one Wilcox, denying his right to obtain title from the government, commenced a residence upon the land. The building erected by Wilcox, the deceased tore down. On May 28th, Wilcox commenced another building. In the afternoon of that day he went to the town of Hays, returning a little after sundown. As he neared the place where he had commenced his new building, the defendant and his brother came to the wagon, one with a rifle and the other with a shot-gun. Wilcox got out, and with them went towards this new building. He had a Colt's navy pistol. As they neared the building the deceased appeared, and one of the three parties approaching shot and killed him. The claim of the state was two-fold: that the defendant was the one who fired the fatal shot; or, if not, that the parties went there in pursuance of a mutual purpose to commit a felony, and that in the attempt to commit that felony, the death was caused. Wilcox testified that defendant was, in his opinion, the party who shot. The defendant's brother fled the country that night, has not since been heard from, and was not a witness at the trial. Defendant testified that he did not shoot, and that it was his brother who did. Other witnesses, claiming to have

been witnesses of the transaction, testified similarly. Upon the mere question of the number of witnesses to the fatal shot, the preponderance was largely with the defendant, but there was other. testimony: the size of the bullet found in the brain of the deceased, the mark of a bullet in a door frame, the condition of the gun and rifle carried by himself and his brother when taken possession of the night of the murder, the feeling shown to have existed between defendant and deceased — all of which pointed towards the defendant as the one who.fired. The defendant is a man with a family, who had resided in the vicinity for some time. Defendant's brother was a single man, a recent comer, and one who could easily change.his residence. The flight of the latter was not till after a visit of the deputy sheriff to defendant's house, and knowledge of the fact that the shot was fatal. Now we do not mention these facts to show that the jury were bound to find that defendant was the one who shot, but simply to show that there was testimony pointing directly and positively to him as the principal offender, the party primarily and principally guilty. And upon a question of fact, based upon contradictory testimony, the verdict of a jury is conclusive in this court.

Upon the other branch of the case, a mutual intent to commit a felony, there was also considerable testimony, to wit: a bitter feeling on the part of defendant toward deceased, prior threats, his appearance at the time with a deadly weapon, his calling to Wilcox to leave the wagon and go to the place of the homicide, his proposition of violence to the deceased at that time as testified to by several witnesses. Indeed, it may safely be asserted that upon the testimony of the state alone, the jury could not well have done otherwise than come to the conclusion that the defendant personally fired the fatal shot, or at the least that he was one of the three who, bent on violence to the deceased, approached and killed him. Either makes him guilty and sustains the verdict, and the question of contradiction between the state and defendant is

a matter not for this court to decide. It cannot be said that the verdict was not sustained by the evidence.

Error is also alleged in the matter of the admission of testimony. The principal line of objection here is, to testimony offered for the purpose of showing the state of mind of defendant toward the deceased. This testimony consisted of evidence of threats, expressions of dislike, and of the opinions of witnesses, based upon what they had seen and heard, that the parties were not on good terms. That evidence of threats and of expressions of dislike is competent, cannot be doubted. Such evidence strictly shows the state of mind of defendant toward the deceased, for out of the abundance of the heart the mouth speaketh. It tends to do away with the presumption which exists against any man's doing injury to his neighbor. It tends to show a willingness to do him harm. Where one of three parties shoots and kills, and it is doubtful which one of them does this, evidence that one had prior thereto threatened to kill, or even that he hated the deceased, points to that one as the guilty party. It also explains the character of the act, makes against an excuse of self-defense and shows a motive for the crime. (*The State v. Horne*, 9 Kas. 119.)

In reference to the matter of opinion, this is the way the testimony was introduced : One witness was asked whether or not, from what he had heard the defendant say, he should say that defendant and deceased were on good or bad terms, and he replied that he should say that they were on bad terms. Another was asked, "Do you know on what terms, as to friendship, this defendant was with Samuel Kipple just previous to this occurrence?" and he replied, "Why, they were not on good terms." This inquiry was followed by one as to how he knew, and the reply was that he had heard defendant say so. Another witness was asked a similar question, and he replied that he knew that they were not on good terms. Was this error? In a certain sense, this was calling for the opinions of these witnesses, and that, too, not upon matters of science or skill. And yet such opinions are often

competent — often the very best and most satisfactory kind of testimony. In the case of *The State v. Folwell,* 14 Kas. 110, a witness was allowed to state that in his opinion it was defendant's wagon that made a certain track. In 1 Greenleaf on Ev., 13th ed., § 440, note 2, p. 495, is collected a number of cases showing to what extent this evidence of opinion has been sustained. Thus it is stated that opinions have been held admissible as to the origin of sounds, *State v. Sherborn,* 46 N. H. 497; as to the health of another, *Wilkinson v. Moreley,* 30 Ala. 562; the meaning of certain gestures, or tones of voice, and to whom they apply, *Leonard v. Allen,* 11 Cush. 241; that a horse appears to be diseased in the foot, 31 N. H. 485; or to be frightened or sulky, 46 N. H. 23; or that a person appears to feel sad, *Calvin v. Dwight,* 6 Gray, 444; or to be intoxicated, *People v. Eastwood,* 14 N. Y. 562. In *Commonwealth v. Sturtevant,* 117 Mass. 122, the court say that "common observers, having special opportunities for observation, may testify to their opinions as conclusions of fact, although they are not experts, if the subject-matter to which the testimony relates cannot be reproduced or described to the jury precisely as it appeared to the witness at the time, and the facts upon which the witness is called to express his opinion are such as men in general are capable of comprehending." See also the opinion of Doe, J., in *State v. Pike,* 49 N. H. 398, in which it is held that non-experts may give their opinions on questions of identity, resemblance, apparent condition of body or mind, intoxication, insanity, sickness, health, value, conduct, and bearing, whether friendly or hostile, and the like. How common it is to ask a witness whether his feelings toward a party are friendly, or otherwise. It is a question of fact as to his own state of mind. And so, where the question is as to the state of mind of a party or a witness toward another, one who is intimately acquainted with such party or witness may be able to speak positively thereof, and yet not be able to give fully, or in detail, the various matters of conduct and speech which have clearly disclosed such mental condition. Of course, upon cross-examination the

basis and extent of his knowledge are open to inquiry. The ruling of the court in this matter furnishes no ground for reversal of the judgment.

Again: Counsel criticise several portions of the charge. Taking a separate paragraph and disconnecting it from the undisputed facts of the case, and some of those criticisms have force — as, for instance, the criticism on paragraph No. 31. But the charge must be taken as a whole, and read in the light of the facts of the case; and where certain facts are undisputed, they enter into and qualify the instructions as given. So read, it does not appear but that the charge clearly, fully, and accurately presented the law to the jury.

So far as the objections to the juror C. A. Faxon are concerned, the evidence fully sustains the action of the court in finding against them. And while affidavits are ordinarily the only testimony received upon motions, we suppose it is competent for the court in its discretion and in furtherance of justice to call the witnesses before it, and have them examined and cross-examined orally in its presence. We all know how often an affidavit speaks the language of counsel rather than that of the witness, or fails to state all the facts; and great injustice might be done if the court had no power to bring the witnesses before it and have them examined in its presence. We do not decide that a party has a right to proceed in this way, but simply that the court may permit it.

We pass now to the only remaining question which we deem it necessary to notice, and that is the failure of the court to admonish the jury at every separation. The facts in reference to this are, as stated by the judge — "that this did not occur at any adjournment, but only when a short recess was had of from three to five minutes or thereabouts, and at two of the recesses in the fore part of the trial the jury were admonished also, and told (as at the first adjournment and admonition) that this admonition was always upon them when out of the jury-box until the trial should close." The statute in reference to this matter reads:

"When jurors are permitted to separate after being im-

panneled, and at each adjournment, they must be admonished by the court that it is their duty not to converse among themselves nor suffer others to converse with them on any subject connected with the trial, or to form or express any opinion thereon until the cause is finally submitted to them." (Cr. Code, § 235.)

In *The State v. Mulkins*, 18 Kas. 16, it appeared that the jury were permitted to separate at night, and the case was adjourned to the next morning without any admonition, and also that one of the jurors was approached during the separation by an outsider, and an opinion expressed concerning the case. It was held that substantial error was shown, compelling a new trial. The rule announced was, that there was error in disregarding the mandate of the statute, and that in the absence of any showing by the state, it would be presumed that such error wrought substantial wrong to the defendant. Does that rule obtain here and compel a reversal? Nothing is shown by the state as to what took place during these separations. Hence, counsel rely upon that decision as conclusive. It appears from the affidavits filed, as well as from the bill of exceptions, that these recesses occurred some seven times during the progress of the trial. Whether during these recesses the jurors left the court room or simply rested themselves by standing or moving about in the presence of the court, we are not advised. It may have been that these were simply to enable a juror to retire for a moment, or while waiting for a witness, or to enable counsel to consult. Now the mandate of the statute is not a mere technical, arbitrary rule, but one designed to protect the substantial rights of the accused. Formerly the jury were not allowed to separate at all, but remained in charge of an officer from the time they were impanneled until the return of the verdict. By our statute, separation is permitted, but in lieu thereof this admonition from the court is required, and such admonition ought always to be given. But under the old practice, if from the record it appeared that no prejudice could have resulted from such separation, the error was

deemed immaterial. Here the brevity of the time of recess makes strongly against the probability of prejudice. Before any separation they were admonished, and admonished that this duty of avoiding conversation and refraining from any conclusion rested upon them at all times until the close of the trial. Would this admonition be any stronger from repetition? All familiar with trials know how often a mere resting, a temporary recess, is given to jury and counsel. Will a failure of admonition at every such recess avoid the verdict? Further, an examination of the statute shows a distinction between a recess and an adjournment. It reads: "When jurors are permitted to separate, after being impanneled, and at *each* adjournment." It does not read at *each* separation. It implies that if any separation is allowed, they should be admonished; but if duly admonished before any separation, and at each adjournment, is not the statute strictly complied with? Doubtless the better practice is, to repeat the admonition whenever the jury pass out of the sight of the court, and if the recess is protracted, it may fairly be considered as tantamount to an adjournment; but when the recess is brief, and an admonition is previously given, and extends by its terms during the whole trial, and the record discloses a trial otherwise fair and impartial, it seems like sacrificing substance to form to reverse a judgment and compel a new trial for an error so trivial and unlikely to have wrought injury. We would not take away any substantial rights from an accused; the forms of proceedings prescribed by statute must be followed, but trifling errors may be disregarded. With some hesitation we overrule this objection.

Nothing else requiring notice, the judgment will be affirmed.

All the Justices concurring.