## THE STATE OF KANSAS v. CLARK W. McKINNEY.

1. **MURDER;** *Pendency of Former Prosecution.* An indictment was pending against defendant, charging him with the crime of murder. While so pending a preliminary examination was held, and an information filed based upon such preliminary examination, and charging the same offense as in the indictment. On the first day of the ensuing term of the district court the indictment was, with leave of the court, *nollied.* Thereafter the defendant was arraigned upon the information, and plead in abatement the pendency of the indictment at the time of the preliminary examination and the filing of the information. *Held,* That the plea was properly overruled.

2. **PREVIOUS DRAWING OF JURY,** *Not Invalidated.* A jury was regularly drawn and summoned to attend the February, 1883, term of the Butler county district court. That county was then a part of the thirteenth judicial district, and the regular term fixed for the third Tuesday of February. Thereafter, and on February 6, 1883, a law took effect creating the eighteenth judicial district, and assigning Butler county to that district. The first term fixed by that law thereafter commenced on the first Tuesday of May, 1883. Without any new drawing or summoning, the jury above named appeared at the May term. The act creating the eighteenth district provided among other things that all proceedings of every kind and character, and all processes of every kind and character, pending in any of the courts of the counties named in the law, should stand, be returnable and triable at the first term of the court for said counties, the same as if the change therein contemplated had not been made. *Held,* That a challenge to the array was properly overruled.

3. **JURORS;** *Talesmen; Discretion of Court.* Where counsel, even in a capital case, agree that the court shall name the persons to be summoned to attend as jurors, and that no person shall be named residing in certain townships, and by mistake one is named who resides therein, *held,* that although such juror on his examination did not appear personally disqualified, the court did not err in setting him aside.

4. ———— The court may in its discretion permit the county attorney to indorse the names of witnesses on the information, even if the trial has commenced.

5. **EVIDENCE;** *Competency.* Where, in a capital case, a map of the locality has been introduced in evidence, and the place of the homicide identified thereon by other witnesses, *held,* that there is no error in asking a witness if the place of the homicide had been shown to him, to point it out on the map, and to locate a house and other objects with reference thereto.

6. MEANS AND OPPORTUNITY; *Threats and Ill-Will.* It is always competent to introduce testimony in a capital case tending to show possession in the defendant of the means of committing the homicide in the manner in which it was committed, and also threats and ill-feeling on his part toward the deceased. And the competency of such testimony does not turn on the question whether it is or is not absolutely conclusive upon those matters; it is enough that it fairly tends to prove them, and then its weight is to be determined by the jury. Hence testimony is admissible as to a fight between the deceased and defendant ten months before the homicide, and of the defendant being beaten in that fight; of threats by the defendant a month or two before the homicide; and of his possession of a pistol, the deceased having been killed by a pistol ball.

7. —————— *Impeaching Facts.* Where, on the trial of a person charged with murder, more than a year after the homicide a witness for the defendant had testified to certain material facts, and this witness had resided in the immediate vicinity all the time, was aware of the homicide and the consequent excitement, of the instant arrest and examination of the defendant, and his commitment for trial, and where the facts so testified to, to wit, the appearance of three strangers riding rapidly away from the place of the homicide right after the time it must have taken place, were of a character to have an obvious bearing on the question of the guilt of the defendant, and such also as any person would ordinarily disclose, *held,* that the state might on cross-examination ask the witness who he told, if any one, of these facts; and upon certain persons being named, might also, in the discretion of the court, prove by such persons that nothing of the kind was ever told them. The silence of a witness is sometimes an impeaching fact, as well as his contradictory statements, and when it is, it may be proved by himself or others.

8. CORROBORATING TESTIMONY; *Competency.* Where, for the purpose of impeaching a witness for the state, the defendant introduces witnesses who testify that at the preliminary examination they heard the former witness, and that he did not then mention the facts testified to by him on the trial, *held,* that the state might in rebuttal call other witnesses also present at such examination to testify that they heard the witness, and that he did then mention these facts.

9. JURY; *Admonition on Separating.* It is not essential that the admonition to be given to the jury at the time of each adjournment be in the very language of the statute; it is enough that the duty of the jury is fully and clearly disclosed to them by the court; and an admonition not to converse "in regard to this case" is, when no objection is made at the time, sufficient, although the language of the statute is "on any subject connected with the trial."

10. SEPARATION OF JURY, *When Allowed.* The court may permit a separation of the jury after the instructions, during the arguments of

counsel, and at any time before they finally retire under charge of their bailiff for deliberation.

11. INSTRUCTIONS; *Character of Offense; Public Sentiment; Results of Verdict.* The court closed its instructions to the jury with these words: "It is claimed that a violated law by the commission of a brutal and blood-curdling, cruel crime lies in one scale of the balance, and the liberty and life, all that there is dear and valuable in life to the citizen, freights the other. I have already instructed you that the defendant is presumed innocent until his guilt is made to appear beyond a reasonable doubt, to be determined by the rules given you in these instructions. No disastrous consequences to result to the defendant as the results of your verdict, or the clamors of a discontented populace, can properly find place for consideration in your deliberations; but the imperative and inexorable demands of the duty imposed on you are, to seek for the truth and fearlessly pursue it in your verdict." *Held,* That the testimony tending to show a wanton and cold-blooded murder, there was no error in stating in the language used the claims of the two parties, and that it cannot be presumed that there was no occasion for cautioning the jury against the improper influences named.

12. VERDICT, *Not Vitiated.* Where in a murder case neither the defendant nor his wife testified in his behalf, and it appears that after the verdict had been agreed upon, reduced to writing, signed by the foreman and placed in a sealed envelope, and while the jury were waiting to be called into the court room, there was some conversation between them as to the fact that his wife did not testify, and that if certain facts bearing strongly against the defendant were not true, she could have contradicted or explained them, *held,* that notwithstanding the last proviso in ? 215 of the code of criminal procedure, there was no error in refusing to set aside the verdict.

13. ———— *Receiving Verdict During Recess.* After the jury had retired for deliberation the court adjourned to the next morning. During such adjournment they sent word that they had agreed upon the verdict. In pursuance thereof they were brought into the court room. The judge and all of the officers of the court were present. The defendant and the counsel on both sides were present. Without objection the verdict was received, opened, and read; and then, at the instance of defendant, the jury were polled. *Held,* That although the verdict was not, as the statute provides, "rendered in open court," yet the error was simply a technical one, no substantial rights of the defendant were trespassed upon, and that under section 293 of the code of criminal procedure the error must be disregarded on appeal.

*Appeal from Butler District Court.*

AT the May Term, 1883, *Clark W. McKinney* was found guilty of murder in the first degree, in the homicide of Wil-

liam H. Reeder, and duly sentenced on the verdict. He appeals. The facts are stated in the opinion.

*A. L. Redden, T. O. Shinn,* and *D. McKinney,* for appellant.

*George Gardner,* county attorney, and *C. N. Sterry,* for The State.

The opinion of the court was delivered by

BREWER, J.: The appellant was convicted in the district court of Butler county of the crime of murder in the first degree, in the homicide of one William H. Reeder, and from the conviction brings his appeal to this court. The case has been elaborately briefed and argued by counsel on both sides. A great many rulings of the district court have been pointed out, in which, as is claimed by appellant, are errors prejudicial to his substantial rights. We have examined the case with care, giving that consideration to every question which the importance of the case demands.

We shall proceed now to notice the various questions, premising that as to some of them, they are fully covered by prior rulings of this court. Of course, as to such matters, it will be generally sufficient to refer to the prior rulings.

I. It appears an indictment was found against the defendant, and that while that indictment was pending the state caused a preliminary examination to be had, and thereafter an information to be filed. On the first day of the ensuing term the county attorney *nollied* the indictment, with leave of the court. On the arraignment of the defendant he plead in abatement that at the time of the preliminary examination and of filing this information, there was pending against him an indictment for the same offense. This plea was overruled, and properly so. (*The State v. Curtis,* 29 Kas. 384.) It was there held, upon full examination, that the pendency of one indictment or information was no bar to the filing of another. Counsel, distinguishing that case, say that the statute provides that offenses may be prosecuted either by indictment or information; that the disjunctive word "or" being used, the state is lim-

ited from the inception to the close to one form of procedure; that while during the pendency of one indictment it may cause another to be filed, and the same with respect to an information, yet that while a proceeding by indictment is pending it cannot change the procedure by filing an information, and thus prosecute by both indictment and information. This attempted distinction is not well taken. Of course a party cannot be put upon trial upon an indictment and an information for the same offense at the same time; and in this sense the state cannot prosecute by indictment and information. But the indictment and information are simply the pleadings on the part of the state. Each one constitutes a separate action, and it is not bound to dismiss one action before it commences another. Here, before the defendant was called to plead to the information, the indictment had been *nollied*, and there was pending no action by indictment against him.

II. Defendant claims that the court erred in overruling his challenge to the array. The facts are, that at the time the jurors were drawn and summoned, Butler county was a part of the thirteenth judicial district, and its term of court for 1883 would have commenced on the third Tuesday of February. For that term the jurors were drawn and summoned. By chapter 102, Laws of 1883, which took effect February 6, 1883, the eighteenth judicial district was created, Butler county placed in that district, and the next ensuing term fixed for the first Tuesday in May. There was therefore no February term of the district court in Butler county. Without any new drawing the jurors summoned appeared at the May term. It is contended that there should have been a new drawing and summoning of jurors. We think not. Section three of said chapter is broad enough to cover the drawing and summoning of the jury. It reads as follows:

"All proceedings of every kind and character, and all bonds, recognizances, subpenas, and all the processes of every kind and character pending in any of the courts of said counties, or either of them, at the date of the passage of this act, shall stand, be returnable and triable at the first term of the court

for said counties as specified in this act, the same as if the change herein contemplated had not been made."

While it may be as counsel say, that the drawing and summoning of jurors is not process issued out of the district court, yet the list of persons so drawn, required by chapter 54, Comp. Laws 1879, § 14, ¶ 8, is equivalent to a *venire*, which by section 15 the sheriff is required to serve and return to the district court, and the jurors are summoned to appear and serve in that court; so that it comes within the broad language, "all proceedings and processes of every kind and character pending in any of the courts."

III. Appellant insists that the court erred in sustaining the challenge of the state to the juror Henderson. The facts are these: After the regular *venire* had been exhausted, the following agreement was made as to a special *venire:* "The court, by agreement of counsel for the state and the defendant, named certain persons to be summoned to attend as jurors in said cause, it being agreed that no person should be named from Augusta, El Dorado, Spring, Little Walnut, or Douglass townships." In pursuance of this agreement the court named a list of jurors, among them Henderson, who were summoned by the sheriff. It appeared upon the examination of the juror Henderson that he was a resident of Spring township, the home of the defendant; and while from such examination it appears probable that he was a qualified juror, yet the court excused him on the ground of his residence. In this we see no error. The fact that a court excuses a juror is not generally sufficient ground for a reversal, providing the jury finally obtained is unimpeachable. (*Stout v. Hyatt*, 13 Kas. 232; *Rld. Co. v. Franklin*, 23 id. 74; *The State v. Miller*, 29 id. 43.) And in this case the juror was excused by virtue of an agreement between counsel, an agreement entered into in the interests of justice, and for the purpose of facilitating the selection of a jury. Counsel say that a defendant in a capital case cannot waive any of his legal rights, and that he has such right to the retention on the jury of any juror who shows himself not personally disqualified. We do

not think the proposition of counsel is correct, at least as broadly as it is stated; and we see no real substantial waiver of any rights.    The court was called upon to name the jurors who should be summoned; and when upon the agreement or suggestion of counsel it determined to select jurors from outside those townships in which the inhabitants were most likely to be familiar with the facts, or influenced by their acquaintance and friendship, it was simply exercising a wise discretion; and if thereafter it appeared that by mistake a juror from one of these townships 'had been named, there was no impropriety in setting him aside.

IV. It is insisted that the court erred in permitting the county attorney to indorse the names of two witnesses on the information.    It has been repeatedly held in this court that such action is within the discretion of the trial court.    (*The State v. Dickson,* 6 Kas. 209; *The State v. Medlicott,* 9 id. 257; *The State v. Cook,* 30 id. 82.)

There is nothing in the rule of the court quoted in the record, which substantially abridges this discretion, or which renders the action of the court in this case subject to just exceptions.

V. We now pass to a series of exceptions taken to the ruling of the court on the rejection and admission of testimony. Among these may be noticed the following: The witness Gallager was permitted, over the objection of defendant, to testify to the place where he was told that the body of Reeder had been found, and from that information located upon a map the position, direction and distance of certain other points.    We see nothing in this objectionable.    The map had been introduced in evidence long before this witness was called, the place where the body was found identified by other witnesses, and the only object of this witness's testimony was the location of other points with respect to the spot where the body was found.

VI. Again, a series of objections runs to testimony of this nature.    Witnesses were permitted to testify as to seeing a pistol in the pocket of defendant several days before the hom-

icide, as to expressions of ill-feeling and threats on the part of the defendant toward the deceased a month or two before; also, to the fact of a quarrel between the parties about ten months before the homicide, and that defendant was beaten in that quarrel; also, to the fact that a pistol was brought to one witness, a gunsmith, about a month before the homicide, which he thought was the one found after the homicide in the house of defendant; and in respect to the probability of the ball found in the body of the deceased having been fired out of such pistol. Now in respect to all this testimony, we remark that it was legitimate for the state to prove in the possession of defendant the means of committing the homicide in the manner in which it was committed, and also the fact of prior difficulty and continued ill feeling as furnishing the motive therefor. It may be conceded that the identification of the pistol was not absolute and perfect; that the quarrel was one of many months' standing, and therefore the presumption of continued ill-feeling and present motive was not as strong as though the quarrel had been of recent date, and yet such testimony was not incompetent. It was for the jury to determine its weight. It was enough for the court to say that the testimony was proper. In *The People v. Bemis*, 16 N. W. Rep., p. 794, (a Michigan case,) Cooley, J., in delivering the opinion, says:

"The prosecution was permitted to show ill-feeling on the part of the respondent towards Henderson, extending back two years before his death. This was objected to as too remote; it was certainly going back a good ways, but we cannot say the trial judge exceeded the limits of a just discretion in receiving the evidence."

VII. The testimony on the part of the state did not disclose any personal observation on the part of any witness of the homicide. It showed the fact that just prior thereto the defendant was seen riding toward the place where the body of deceased was found, and that immediately thereafter he was seen riding rapidly therefrom. The trial took place more than a year after the homicide, and on that trial the defendant

37—31 KAS.

introduced two witnesses living in the immediate vicinity, whose testimony was that at or about the time of the homicide they saw riding away therefrom at a rapid gait, a man on a different colored horse from that ridden by defendant, and two parties in an open buggy. Of course such testimony raised a question as to whether the homicide was not committed by one of these three parties, instead of by defendant. Evidently this testimony was a surprise to the counsel for the state, and on cross-examination they asked the witnesses if they were not aware of the excitement which prevailed in the vicinity at the time of the occurrence of the homicide, which question they answered in the affirmative, and then if they had told any one of what they had seen. This question one of the witnesses answered in the affirmative, saying that she had told a neighbor shortly after the occurrence. In rebuttal this neighbor was introduced, and asked if anything of the kind was said to her. Over the objection of the defendant she was permitted to answer, and testified that nothing of the kind was intimated to her. We think it was within the discretion of the court to permit the impeachment of the witness in the manner in which it was done. Of course it was material to know whether such parties were really seen in the vicinity of the homicide at the time of its occurrence. It is always competent to impeach a witness by proof of statements outside the court room, contradictory of those made on the witness stand, and we think within the same principle it is competent to prove that a witness claiming to be possessed of information most important, and aware of the occurrence and the excitement caused thereby, did not, as she claimed, disclose the information to anyone. It is against human nature that a witness possessed of such important information and aware of the occurrence and the feeling pervading in the community in consequence thereof, should not disclose it to anyone, and when such witness claims that she did in fact disclose the information to certain parties, it was competent to show by such parties that she did not. It certainly was strong impeaching testimony, and as such we think it was

legitimate. (*Powers v. Leach*, 26 Vt. 270; *Cady v. Owen*, 34 id. 598; *Howe v. Thayer*, 17 Pick. 91.)

VIII. Two witnesses testified that they went to arrest defendant on the day of the homicide; that at the time of arrest they said nothing to him except that Reeder was killed, and that he was charged with the homicide; that thereupon he said to his wife and hired hand that Reeder had been found in the road shot and killed, and that he had to go to Augusta to stand a preliminary examination therefor. Impeaching these witnesses, the defense offered two witnesses present at the preliminary examination, who testified that they heard the two prior witnesses on the preliminary examination, and that they had no recollection of these witnesses giving any statement as to such language on the part of defendant, at the time of the arrest. In rebuttal, and as corroborative of the first two witnesses, the state introduced a witness who was present at the preliminary examination, and who testified that these witnesses did give the same testimony then as to the language of defendant.

We think this evidence was competent. Of course the testimony of the two witnesses offered by the defense was in the nature of impeachment, as tending to show that the matter referred to by the plaintiff's witnesses was an afterthought, and it was perfectly legitimate to attack this impeachment by testimony that at the very time named and immediately after the arrest they told the same story.

These are all the matters in respect to the rulings of the court in the rejection and admission of testimony which it will be necessary to notice. Many other matters of a similar nature are referred to by counsel in their elaborate brief, but after a careful examination of them all, we are constrained to say that nothing appears of sufficient moment to justify any interference with the verdict. We think that it may fairly be said that there is no error in the rulings of the court in respect to the testimony, open to just criticism. No testimony of an improper nature was admitted, and everything which would have a legitimate bearing upon any question of

fact in the case was admitted.   We think, therefore, this entire series of objections is without just foundation, and must be overruled.

IX. We pass now to an objection of a different nature.   It is insisted that the court failed to give proper admonitions to the jury at the time of the several adjournments.   It is not pretended that an admonition was not given, but the claim is that it was not sufficiently full and specific.   The section of the statute bearing thereon reads as follows:

"When jurors are permitted to separate, after being impaneled, and at each adjournment, they must be admonished by the court that it is their duty not to converse among themselves, nor suffer others to converse with them, on any subject connected with the trial, or to form or to express any opinion thereon, until the cause is finally submitted to them."

Upon the occasion of the first adjournment after the jury had been impaneled, the court admonished them as follows:

"You, gentlemen of the jury, will remember the charge I have given you, not to talk to each other, or allow any person to talk to you, or form any opinion in regard to this case until it shall be finally submitted to you; not to talk about or express any opinions, and be here promptly at eight o'clock in the morning."

The subsequent admonitions were equally full and specific, and generally referred to the admonition previously given. Now the specific objection is, that while the statute prescribes that it is their duty not to converse "on any subject connected with the trial," the language of the admonition was simply "in regard to this case," and it is claimed that there is a substantial and important difference between these two expressions.   We do not think there is any such difference as will vitiate the proceedings.   The language of the admonition is broad, "*in regard to this case,*" and embraces in it everything involved in the trial.   We do not understand that the statute imperatively requires that the court shall use its very language, but it is at liberty to use other words and expressions, providing in so doing it gives an

equally full and specific caution and admonition; and this, we think, it clearly did.

Further, it may be noticed that no objection was made by defendant at the time to any admonition, or any suggestion that it lacked fullness, or was in any respect deficient. See in respect to this matter of admonition the case of *The State v. Stackhouse*, 24 Kas. 445.

X. It is objected that the court erred in permitting the jury to separate after having been charged, and in support of this the cases of *Madden v. The State*, 1 Kas. 340, and *Lewis v. The State*, 4 id. 296, are cited. It does not appear from the record that the jury were permitted to separate after the case had finally been submitted to them for decision. It does appear that after they had been charged, and after two arguments, one on either side, the trial was adjourned until the next morning, and the jury after due admonition permitted to separate; and also by the affidavits of counsel, that after the arguments were all finished, the court took a short recess before sending the jury out for deliberation, and that during the recess there was a separation. Now in the case of *Madden v. The State*, the jury had actually retired for the purpose of deliberation, and the separation of the jurors was not by authority of the court, but simply at the instance or through the connivance of the bailiff in charge. The distinction between the two cases is marked. While in the Madden case the argument preceded the charge, and after the charge there was nothing for the jury to do but to retire and deliberate, yet under the present statute the charge precedes the argument, so that, especially in an important case, many hours may intervene between the charge and the retirement for final deliberation. And while the arguments of counsel are being made, and up to their retiring for final deliberation, we think, notwithstanding the first sentence in § 237 of the code of criminal procedure, that the court may under proper admonitions permit the jury to separate. We therefore see no error in the ruling of the court in this respect.

XI. It is claimed that the court erred in several of its in-

structions. Some half-dozen are briefly criticised. We have examined the charge as a whole, and the several instructions particularly criticised, and we think both as a whole and in its several parts it presented the law clearly and correctly. Some of the questions raised by counsel have been already passed upon by this court, and need not be referred to. The fourth instruction is objected to on the ground that it assumes that the defendant committed the assault that caused the death of Reeder. It does use the expression "said assault," but that of course refers to what is said in prior instructions, and in them the question as to who committed the assault is distinctly left as a fact to the consideration of the jury. If what is meant by the phrase "reasonable doubt" can be made more intelligible in any other way than by the use of the expression itself, we think the seventh instruction was calculated to accomplish this result. Its language is, "not mere conjectures or fanciful speculations, but such real and substantial doubts as would prompt your action in any important event in which you might be interested." Certainly of that, defendant has no right to complain. We see nothing in the twelfth instruction deserving of the criticism placed upon it by counsel. It simply states what is claimed on the one side, and the other; and appeals to the jury, giving the defendant the benefit of a reasonable doubt, to return a true verdict, uninfluenced by improper considerations. Obviously some such instructions as that are often called for by circumstances surrounding the trial, and we cannot say that such did not exist in this case, or that the court erred in its admonitions in respect to such matters. It seems to us that the instructions are correct, and must be sustained.

XII. It is insisted that the court erred in not granting a new trial on the ground of the misconduct of the jury and the county attorney. In reference to the former, putting all the affidavits of the jurors together, we think the facts deducible therefrom are these: After the jury had agreed upon their verdict, and it had been reduced to writing, signed by the foreman, placed in a sealed envelope, and while the jury

were waiting for the bailiff to bring them into the court room, one of their number referred to the fact that defendant's wife had not been called as a witness, using language like this: "If the defendant McKinney is not guilty, why did he not produce his hired hand, the young man on his place, and his wife, to show his whereabouts and where he was during the time which he told the boy to say that he had not been away from home. If he was not away, his wife must have known it." This, it is claimed, is in direct violation of § 215 of the code of criminal procedure, which authorizes the defendant in a criminal action and his wife to testify on his behalf, which section contains this proviso:

"That the neglect or refusal of the person on trial to testify, or of a wife to testify in behalf of her husband, shall not raise any presumption of guilt, nor shall the circumstance be referred to by any attorney prosecuting in the case, nor shall the same be considered by the court or jury before whom the trial takes place."

Upon these facts we remark that the verdict was agreed upon and prepared before any reference was made to the failure of defendant's wife to testify, and that there is nothing to show that such failure was in any manner considered by any of the jury in coming to their conclusion. We lay out of consideration so much of the affidavits of the jurors as states that they were not influenced by and did not consider that fact in coming to their conclusion; for probably that is a matter which inheres in the verdict, and so one upon which jurors may not testify. But if it is competent for the defendant to show by the jurors that such a conversation took place, it is equally competent for the state in like manner to show when and under what circumstances it took place; and as stated, it did not take place until the verdict was agreed upon, signed, and ready for delivery to the court.

If it be said that until it was delivered to the court it could be changed, and was therefore not technically the verdict of the jury, we reply that it was not changed, and that it was agreed upon and prepared before any of this conversation.

If it be said that it is evident from what occurred that at least some of the jury knew that she was a competent witness and most likely must have thought of that in coming to their conclusions, we reply that that law has been so long in the statute book that almost every intelligent man in the state is aware of its existence, and knows that both a defendant and his wife may testify in his behalf; so that if ignorance of that fact is one of the qualifications of a juror, it will be exceedingly difficult to secure an intelligent jury. Further, we are not to presume that they disregarded the law, or reached their verdict upon other than the testimony which was before them. We cannot presume that it was based upon matters outside the case.

XIII. The final matter of alleged error is in receiving the verdict at the time it was received. The facts are these: Between seven and eight o'clock in the evening, the case was committed to the jury, and they retired for deliberation. The court then adjourned until the next morning. At eleven o'clock that night, the jury announced that they had agreed upon their verdict, and were called into the court room. The judge was present, and the officers of the court, also the defendant and counsel on both sides. The verdict was received, opened, and read, and, at the instance of defendant's counsel, the jury were polled. Thereupon the jury were discharged. After this, and without any previous objection or suggestion, defendant by his counsel objected to the verdict, on the ground that it was not received in open court. The statute, § 238, code of criminal procedure, provides that a verdict must be rendered in open court. Clearly there was a technical departure from this rule. But § 275, which prescribes the grounds for a new trial, contains nothing which would reach a question like this; and § 293 provides that "On an appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties." Under these two provisions, we think, the error is not one which will justify a reversal of the judgment. Every substantial right of the

defendant was secured.  He was present, his counsel were there, the verdict was opened and read in his hearing, the jury were polled at his instance, and each one declared that it was his verdict.  There was nothing but a technical departure from a statutory requirement.

Again, the receiving of a verdict is a ministerial, or at least only a *quasi*-judicial act.  It may be received on Sunday, though that is *dies non;* and no judicial act can be performed on it. (*Stone v. Bird,* 16 Kas. 488.)  In 1 Bishop on Criminal Procedure, § 1001, the author observes as follows:

"The receiving of a verdict is by some judges spoken of as a judicial act, by others as a ministerial act.  Practically it is by all or nearly all treated as ministerial, or at most, as only *quasi* judicial.  It may be done when no strictly judicial act can be; as, on Sunday.  Though Sunday is *dies non juridicus,* wherein no judicial act is valid, but ministerial acts are.  A verdict received on Sunday is good, yet not a judgment on the verdict.  And on Sunday the court may find the fact that the jury cannot agree, and discharge them.  Again, though after a jury has gone out for deliberation, the court adjourns to a future day in the term, the judge with his proper officers may receive their verdict in the open court room, a proposition to which, while sound in reason, the authorities appear not to be quite uniform."

See also *Railroad Co. v. Hand,* 7 Kas. 389; *Davis v. The State,* 14 Ind. 358, and other authorities cited by Bishop in his notes to the section quoted.  We shall not attempt to review the many authorities contrary to this view which are cited by counsel.  Many of them rest on the fact that the defendant was not himself present, or being present lost his right of polling the jury in consequence of the absence of his counsel.  Of course such authorities are not in point, because here the defendant was present, as well as his counsel, and the jury were in fact polled.  It may also be questionable whether the conduct of the defendant and his counsel was not a waiver of any objection, and this, even if the error were of a more serious nature. (*Blake v. Bailey,* 16 Gray, 531.)  Though, as we think the error was not in itself fatal

under the circumstances of the case, it is unnecessary to rest anything upon a supposed waiver by counsel.

These are all the questions in the case which we think deserving of notice. We have examined every question presented by counsel, carefully read the voluminous record, and are of the opinion that the defendant has no just cause of complaint; that he received a fair and impartial trial; and that the verdict of the jury is, upon the testimony, the right one.

The judgment will be affirmed.

All the Justices concurring.