## THE PEOPLE *vs.* JOHN FINNEGAN.

As a general rule, it is not competent, in support of the testimony of a witness, for the party calling him, to prove that he has made declarations out of court corresponding with his testimony in court. The exceptions to this rule stated.

And this rule is applicable to cases where an attempt is made, on a cross-examination, to throw doubts on the testimony of a witness, as well as to cases where other witnesses have been called and examined to contradict the statement of the witness.

An exception is available for the purpose of correcting an error in the admission or rejection of evidence, in granting or refusing a nonsuit, in charging or refusing to charge the jury on a specific proposition, or in deciding any question on the trial affecting the merits; but all that relates to the manner of conducting the trial, to the forms of the questions asked, if not objectionable in substance, and to the range allowed to counsel in their arguments, is matter of discretion, as to which a remedy for a supposed error can not be had by an exception.

Where the court permitted the counsel for the people to urge to the jury that they might infer from the prisoner's omission to prove a good character, that his character was bad, because the counsel for the prisoner had stated to the jury in opening the defence that he had known the prisoner from his youth and knew him to be a man of fair character, *held,* that such decision could not be reviewed on exception, the latitude to be allowed counsel in addressing the jury being a matter of discretion; but that the proper way to have raised the question was by asking the court to charge, after the counsel had addressed the jury, on a specific proposition as to the legal presumption, and if the court refused so to charge then to except to such refusal.

In criminal, as well as in civil cases, except in a criminal prosecution for libel, it is the duty of the court to decide the questions of law and of the jury to decide the questions of fact.

Certiorari to the mayor's court of the city of Albany.  The prisoner was indicted and convicted of robbery in the first degree.  The indictment charged that the prisoner, on the 20th day of November, 1847, at the city and county of Albany, with force and arms, in and upon one William F. Terhune, &c., feloniously did make an assault and certain articles of personal property, therein described and belonging to the said Terhune, from the person of the said Terhune then and there violently and feloniously did steal, take and carry away, to the great damage, &c., and against the form of the statute, &c.  The prisoner pleaded not guilty, and the cause came on to trial in the Albany mayor's court on the 16th February, 1848.  After Terhune had been called as a witness on the part of the prosecution and had been fully examined and cross examined as to the circumstances of the transaction in detail, Weare D. Parsons was called as a witness for the prosecution and testified that he was the keeper of the Carlton House, where Terhune stopped at the time of the alleged robbery; that he recollects that Terhune came in, that evening about eight o'clock, that his back was covered with sand and his knees and other parts of his body were covered with clay or dirt; that his face was a little scratched, &c., and that he said something when he came in.  He was then asked by the district attorney the following question.  What did Terhune say when he came in about the robbery and the persons who robbed him?  The prisoner's counsel objected to the proof by this witness of the account given by Terhune on that occasion, of the manner in which he was robbed, and of the persons who, he alleged, committed the robbery.  The court overruled the objection and the counsel for the prisoner excepted.  The witness then answered, that Terhune came into the house and said he had been robbed. Witness asked him of how much, and he stated of one hundred and seventy dollars, or something near that.  Witness then asked him where, and he answered somewhere in the suburbs of the city; he could not tell where; but it was somewhere on the hill.  Witness then asked him if he knew who it was that robbed him.  The prisoner's counsel objected particularly to

The People *v.* Finnegan.

the witness stating who Terhune said had robbed him. The court overruled the objection and the prisoner's counsel excepted. The witness then stated the particulars of the transaction as related by Terhune, including a description of the persons who robbed him, though Terhune said he did not know their names.

While the counsel for the people was addressing the jury, he said he had two questions which he would put to the prisoner's counsel and which he wished them to answer, if they could, and which were of vital importance to the prisoner. The first of which was, why they had not proved the character of the prisoner to be good? That they would have done this if they could, and not having done so, the fair inference was that they could not do it, because his character was bad. The counsel for the prisoner objected to these comments upon the fact of the omission to prove the prisoner's character, and claimed that no such inference should be drawn from the fact. The court decided that as the counsel for the prisoner. in opening the cause had stated that he had known the prisoner from his youth up and knew him to be a man of fair character, the public prosecutor might in reply, in answer to that statement comment upon the fact that no evidence of good character had been produced by the prisoner, and that the court saw nothing objectionable in the comments so made. To this decision and ruling of the court, the counsel for the prisoner excepted.

The court charged the jury among other things that they were judges of the law and the fact in this case, and that, for that reason, the court had less power in criminal, than in civil cases, and that the duty of the court was only advisory: to this point of the charge the prisoner's counsel excepted.

The jury found the prisoner guilty of robbery in the first degree. The court suspended sentence, to give the prisoner's counsel an opportunity to make a bill of exceptions, but ordered that the prisoner in the meantime should remain in custody, and should not be let to bail. A bill of exceptions having been perfected, and the proper certificate of a judge obtained, as required by 2 *R. S.* 736, § 24, the district attor-

ney removed the indictment, bill of exceptions and other proceedings to this court, by writ of certiorari, according to the provision of section 27, 2 *R. S.* 736.

*H. G. Wheaton,* for the prisoner, made the following points:

I. The court erred in admitting the witness Parsons to testify to what Terhune told him took place on the night of the robbing, and particularly to what he said as to who it was that had robbed him. (*Dudley* v. *Bolles,* 24 *Wend. R.* 472.)

II. The court erred in deciding that the counsel had a right to urge to the jury, that they might infer from the prisoner's omission to prove a good character, that his character was bad. (*The People* v. *White,* 24 *Wend.* 520, 573.)

III. The court erred in charging the jury that they were the judges of the law and the fact, and that the only duty of the court was advisory. (*Cow. and Hill's notes,* 1501.)

*S. H. Hammond* (district attorney), for the people.

*By the Court,* PARKER, J.   What Terhune told Parsons on the night of the robbery, could not have been received in evidence, on the ground that it was a part of the *res gesta.* It occurred subsequent to the robbery, though very soon after it. It was clearly no part of the transaction itself, nor was it necessary to the proper understanding of any part of what was done.

But it was probably received in evidence for the purpose of corroborating the testimony of Terhune, who had previously been examined as a witness for the prosecution, by showing that he made the same statements out of court and immediately after the occurrence which he had made as a witness in court. There is certainly some authority for receiving evidence of that character. (*People* v. *Vane,* 12 *Wend. R.* 78, *and cases there cited.*) But this question and all the authorities bearing upon it have been fully examined in *Robb* v. *Hackley* (23 *Wend.* 50), where it is decided, in a very learned opinion delivered by Bronson, J., that such evidence is not admissible. This last

cited case was approved and followed in *Dudley* v. *Bolles* (24 *Wend.* 465, 472), and the law on this point must now be re-garded as well settled by these later decisions.  A careful reading of the case of *The People* v. *Vane* shows that the ques-tion did not necessarily arise in that case, and the dictum of the court on this point must now be regarded as overruled.  In England, as well as in this country, it is believed such evidence is no longer admissible. (*The King* v. *Parker*, 3 *Doug.* 242; *Bull. N. P.* 294; 1 *Starkie Ev.* 148; 1 *Phil. Ev.* 107, 307, *note*; 1 *Starkie Ev.* 149, *note; 1 Cow. and Hill's notes*, 776.) The exceptions to the rule, as now established in this state, are when the witness is charged with giving his testimony under the influence of some motive prompting him to make a false or colored statement, in which case it is said it may be shown that he made similar declarations at a time when the imputed motive did not exist: and where there is evidence in contra-diction, tending to show that the account of the transaction · given by the witness is a fabrication of *a late date*, it is said it may be shown that the same account was given by him before its ultimate effect and operation, arising from a change of cir-cumstances, could have been foreseen. (*Robb* v. *Hackley*, 23 *Wend.* 50.)  But neither of these exceptions are applicable to the case under consideration.  The evidence in this case was received only for the purpose of answering the doubts attempted to be thrown by the cross-examination upon the testimony of Terhune.  But it was not admissible for that pur-pose.  It stood upon the same footing as if it had been offered to support the witness after other witnesses had been called to contradict him.  What Terhune had previously said was mere hearsay, and could add nothing to the weight of his testimony. The court below erred therefore in receiving the evidence.

The next alleged ground of error is, that the court permitted the counsel for the people to urge before the jury, that they might infer, from the prisoner's omission to prove a good cha-racter, that his character was bad.  This was permitted by the court for 'he reason that the counsel for the prisoner, in opening the defence, had stated that he had known the prisoner from

his youth, and knew him to be a man of fair character  It is supposed that the refusal of the court to restrain the counsel for the people in his argument, within what was suggested by the defendant's counsel as the true limit, will bring this case within the decision in *The People* v. *White* (24 *Wend.* 520).  In that case the judge in his charge, after alluding to the benefit of good character to the accused in a doubtful case, called the attention of the jury to the absence of such proof in the case before them, and it was held erroneous and ground for a new trial.  But although it may be error so to charge, it is not for the counsel so to argue, or for the court to permit such argument.  The limits within which counsel are to be restrained is a matter of discretion, and an exercise of that discretion can not be reached and corrected by an exception.  The prisoner's counsel should have submitted to the court a request to charge in regard to the presumption claimed to arise from the omission to prove good character, and to such charge, or to the refusal to charge, an exception could have been taken.  An exception is available for the purpose of correcting an error in the admission or rejection of evidence, in granting or refusing a nonsuit, in charging or refusing to charge the jury on a specific proposition, or in deciding any question on the trial affecting the merits.  All these matters properly belong to the record as presented by a bill of exceptions.  But all that relates to the manner of conducting the trial, to the forms of the questions asked, if not objectionable in substance, to the restricted or wide range allowed to counsel in their arguments, are matters of discretion in the court before which the trial is had, and as to them, a remedy for a supposed error can not be had by an exception.  The second exception is not therefore available.

The third point made by the defence is, that the court erred in charging that the jury were the judges of the law and the fact, and that the only duty of the court was advisory.  This was erroneous.  It is only on the trial of indictments for libel, that "the jury have the right to determine the law and the fact" (*Const. of New York, Art.* 1, *Sec.* 8).  In all other criminal prosecutions, as well as in all civil actions, it is the

The People *v.* Finnegan.

duty of the court to decide the questions of law and of the jury to decide the questions of fact. (*Carpenter* v. *The People*, 8 *Barb. S. C. R.* 603; *Cow. & Hill's Notes to Phil. Ev.* 1501; *Barb. Cr. L.* 2d ed. 353; 2 *Sumner R.* 240, 243; 2 *Blackf.* 156, *Addis. R.* 156.) In 2 *Sumner*, 240, Story, J., said, it had been the opinion of his whole professional life, that the jury are no more judges of the law, in a capital or other criminal case, upon the plea of not guilty, than they are in every civil case tried upon the general issue. He said that, in each case, they had the physical power, but not the moral right, to decide the law according to their own notions or pleasure. That it is the duty of the court to instruct them as to the law, and of the jury to follow such instruction. That if the jury were to decide, it would render the law uncertain: it would be almost impracticable to learn what they did decide; the court would have no right to review their decisions, and every person has a right to be tried according to the fixed laws of the land.

A wrong impression on this point has prevailed to some extent in the community, and it is time it was corrected. The doctrine that the jury are to decide the law in criminal cases, with the single exception made by our state constitution, can not be supported either upon principle or by authority.

The proceedings in the court below must be reversed, and a new trial awarded in the Albany mayor's court.