THE STATE OF KANSAS V. EMMA HENDRICKS.

1. MURDER — *Declarations — Incompetent Evidence.* In a criminal prosecution against a husband and wife for murder in the first degree, where the wife is tried separately, she has no right to prove the declarations of her husband made the day before the killing, and made only in the presence and hearing of third persons having no connection with the controversy which resulted in the death of the person alleged to have been murdered.

2. IMPEACHED WITNESS, *Testimony of, How Corroborated.* If a witness be impeached by proof of his having previously made statements out of court inconsistent with his testimony in court, he may then be corroborated by evidence of other statements made by him out of court in harmony with his testimony, if made immediately after the occurrences of which he has testified took place, and made before he has had any reason or ground for fabricating an untrue or false statement; and such corroborating evidence is not limited to those statements made by him before the time when his statements given in evidence to impeach him were made, but may be extended to other statements made by him afterward.

3. HUSBAND AND WIFE — *Coercion — Presumption.* The laws of Kansas do not presume that a wife who unites with her husband in the commission of a crime acts under his coercion. On the contrary, the laws of Kansas presume that all persons of mature age and sound mind act upon their own volition and are responsible for their acts. The question whether a wife acted under the coercion of her husband or not is a question of fact which should in all cases be left to the jury.

4. INSTRUCTIONS, *Limited to the Evidence; No Material Error.* Instructions in a criminal prosecution for murder in the first degree, as well as in other cases, should run to the facts as detailed by the evidence and to all probable interpretations of them, but not to questions which, though possible under the information, are not in fact presented by the evidence; and *held,* in this particular case, that the trial court did not commit material error in failing to instruct the jury upon the several degrees of manslaughter

5. JURY — *Separation.* The court in a criminal prosecution for murder in the first degree, as well as in other cases, may permit a separation of the jury after the instructions are given and before the arguments of counsel are fully completed, and indeed at any time before the jury are allowed to retire under the charge of their bailiff for final deliberation upon their verdict.

6. ———— Other questions considered and decided.

The State v. Hendricks.

*Appeal from Chautauqua District Court.*

PROSECUTION for murder in the first degree. The defendant, *Emma Hendricks*, and her husband, were jointly charged with the murder of Thomas McGuire in Chautauqua county, on November 25, 1883. Separate trials were granted to the defendants. Trial of *Emma Hendricks* at the March Term, 1884, of the district court, when she was found guilty of murder in the second degree. The court overruled her motion for a new trial, and also her motion in arrest of judgment; and sentenced her to imprisonment for life in the state penitentiary. From this sentence she appeals to this court. The opinion states the material facts.

*J. D. McBrian,* for appellant.

*Ben. S. Henderson,* county attorney, for The State.

The opinion of the court was delivered by

VALENTINE, J.: This was a criminal prosecution for murder in the first degree. The defendant, Emma Hendricks, and her husband, Cyrenus B. Hendricks, were charged jointly upon information with the murder of Thomas McGuire, in Chautauqua county, Kansas, on November 25, 1883. Separate trials were granted to the defendants, and on March 20 to 22, 1884, the defendant Emma Hendricks was tried before the court and a jury, and on the last-mentioned date she was found guilty of murder in the second degree. She then filed a motion for a new trial and also a motion in arrest of judgment, which motions were overruled, and the court then sentenced her to imprisonment in the state penitentiary for the period of her natural life. From this judgment and sentence she now appeals to this court.

In this court she alleges that the court below erred in the following particulars:

"1. The court erred in excluding the evidence of the witnesses, George Edwards and Lew. Lynn, offered by the defendant.

"2. The court erred in allowing the witness Alexander—

a witness for the prosecution — to testify over the objection of the defendant, to certain statements made by the witness Stella McGuire.

"3. In refusing to give to the jury the special instructions prepared and asked for by said defendant.

"4. There was error in the instructions given by the court.

"5. The court erred in permitting and allowing the jury to separate, after hearing the charge of the court, and before verdict.

"6. The motion for a new trial should have been sustained, on the ground of misconduct of the jury.

"7. Misconduct of the county attorney during the deliberations of the jury.

"8. The jury were not kept in a private or convenient place.

"9. Newly-discovered evidence."

We shall consider these matters in their order.

I. The defendant and her husband, Cyrenus B. Hendricks, were charged with killing and murdering Thomas McGuire, by shooting him with a revolving pistol, on November 25, 1883. The evidence clearly proved this charge. Indeed, the evidence clearly proved that the defendant herself did the shooting, though both were evidently guilty. On the trial, however, the defendant, for the purpose of showing that her husband was the real offender and that she was merely an unwilling instrument acting under his orders and commands, offered to prove by the testimony of George Edwards and Lew. Lynn the declarations of her husband made on the day before the killing, and made, not in the presence or hearing or with subsequent notice to her, and not in the presence or hearing or with subsequent notice to McGuire, but made merely in the presence and hearing of third persons having no connection with the controversy that resulted in the death of McGuire. The court refused to permit this evidence to be introduced, and in doing so certainly did not commit any error. The evidence was in fact and in law insufficient and incompetent; and if admitted it would not have proved or tended to prove that the defendant was innocent, or even that she was not the principal offender herself.

36—32 KAS.

II. It appears from the evidence that the shooting was done at the house of Mr. McGuire, the deceased, and in the presence of a portion of his family. Stella McGuire, his daughter, a little girl eight years old, testified on the trial that the shooting was done by Mrs. Hendricks. Upon cross-examination, she testified that immediately after the shooting her mother told her to go to Mr. Alexander's, near by; that she immediately ran to the house, and knocked at the door; that Mrs. Thayer opened the door; that Mrs. Thayer, Mrs. Alexander and Mrs. Hahn were there; that she was crying at the time; and she further testified, "I told them that Cyrenus Hendricks and Em. (Mrs. Hendricks) had shot my pa." Counsel for the defendant then asked her the question, "Didn't you say that Cyrenus Hendricks had shot your father?" She answered, "No, sir." This was the foundation for introducing impeaching evidence; and for this purpose the defendant introduced Mrs. Hahn and Mrs. Alexander as witnesses. Mrs. Hahn testified, among other things, that Stella McGuire came to Alexander's and said "They have shot my pa dead in the house;" that Mrs. Thayer then said, "They?— who?" and Stella said, "Cyrenus Hendricks." Mrs. Alexander testified, among other things, that Stella said, "Cyrenus Hendricks shot pa dead in the house." The women testified that they were all excited, and that the little girl was very much excited, and crying. Stella McGuire remained at Alexander's only a few minutes, and then started home. After the foregoing evidence was introduced, the prosecution, for the purpose of supporting Stella McGuire's testimony, introduced Mr. Alexander as a witness. He testified that he saw the little girl at his house; that he was near by, and when she started home he overtook her and asked her what she was crying about; and she said that "Cyrenus Hendricks and Emma Jones had come to her house and shot pa down dead." The defendant was a young married woman, whose maiden name was Emma Jones, and who then lived with her mother, Mrs. Jones, near where the McGuires and Alexanders resided.

The defendant claims that the court below erred in admitting this testimony of Alexander's. We think the testimony had but little materiality in the case; but whether it had much or little materiality, we do not think that the court below committed any error in admitting it. It is well settled by the authorities that if a witness be impeached by proof of his having previously made statements out of court inconsistent with his testimony in court, he may then be corroborated by evidence of other statements made by him out of court in harmony with his testimony, if made immediately after the occurrences of which he has testified took place, and made before he has had any reason or ground for fabricating an untrue or false statement; and such corroborating evidence is not limited to those statements made by him before the time when his statements given in evidence to impeach him were made, but may be extended to other statements made by him afterward. (*Brookbank v. The State,* 55 Ind. 169; *Coffin v. Anderson,* 4 Blackf. 395; *Dailey v. The State,* 28 Ind. 285; *Hotchkiss v. Germania Fire Ins. Co.,* 12 N. Y. S. C. [5 Hun] 90; *The People v. Vane,* 12 Wend. 73; *Jackson v. Etz,* 5 Cow. 314; *The State v. George,* 8 Ired. [N. C. L.] 324; *The State v. Dove,* 10 id. 469; *March v. Harrell,* 1 Jones, [N. C. L.] 329; *Dossett v. Miller,* 3 Sneed, 72; *Cooke v. Curtis,* 6 Har. & J. [Md.] 93; *Lyles v. Lyles,* 1 Hill, [S. C. Ch.] 76; *The State v. Dennin,* 32 Vt. 158; *Commonwealth v. Wilson,* 67 Mass. 338; *Henderson v. Jones,* 10 Serg. & R. 322.)

Also in this connection see the following, which have some application to this question: *French v. Merrill,* 6 N. H. 465; *The State v. Vincent,* 24 Iowa, 570; *Stolp v. Blair,* 68 Ill. 541; *People v. Doyell,* 48 Cal. 86. Also in this same connection see the case of *The State v. Petty,* 21 Kas. 54. The decision in the last-mentioned case is to some extent modified and limited by the decision in this present case.

III. With reference to certain instructions refused and others given, the defendant claims that the court below erred with respect to the responsibility of a married woman when acting in the immediate presence of her husband. The de-

fendant asked the court to instruct the jury, among other things, as follows:

. "If Cyrenus B. Hendricks was the husband of the defendant, Emma Hendricks, and was immediately present with her at the time the shot was fired, if it was fired by her, the law presumes that she was acting under his coercion, and the jury should so find."

The court refused to give this instruction, and instructed the jury, among other things, as follows:

"In the eye of the law, a wife who voluntarily and knowingly aids and assists her husband in the commission of a murder is equally guilty with him of the commission of the crime." . . . "A wife who kills another in the presence and under the constraint and coercion of her husband, the act of killing being the result of the husband's constraint and control of her will, and not the result of her own volition, is excusable for the act in the eye of the law and cannot be punished therefor. If the killing, however, is voluntary upon her part, and the result of the independent action of her own will, although done in the presence or at the suggestion of her husband, she is held to the same measure of responsibility as any other person."

We do not think that the court below committed any error in giving and refusing these instructions. The laws of Kansas do not presume that a wife who unites with her husband in the commission of a crime, acts under his coercion. On the contrary, the laws of Kansas presume that all persons of mature age and sound mind act upon their own volition, and are responsible for their acts. The statutes relating to crimes and punishments and to the mode of procedure in criminal actions, do not, except in rare instances, make any distinction between married women and unmarried women, or between married women and married men, or between any kind of women and any kind of men. All alike are responsible for their acts. And in Kansas, women have all the rights and privileges that men have, except merely that they cannot vote at general elections. A married woman may sue and be sued, contract and be contracted with, buy, sell, barter, trade and carry on business in the same manner, to the same extent, with like effect, and as

freely as any other person may. And all this she may do in her own name, and in the same manner as others not in her condition. The common law with reference to the disability of married women has but little room for operation in Kansas. Besides, Mr. Wharton, in his work on Criminal Evidence, § 733, speaking of the presumption contended for by the defendant, says: "In the old practice in criminal cases, treason and murder were excepted from the operation of this presumption."

But, giving this presumption its fullest scope — supposing that it has operation at common law in murder cases, as well as in many others — still we do not think it can have any operation in Kansas; and this on account of the changed condition of our society and institutions. The presumption was probably right, when first adopted, for the state of society which then existed. But it cannot be right now under our present condition of society. And it is not the law. There was once a reason for the presumption; but that reason has long ago ceased to exist in Kansas; and when the reason for the presumption has ceased to exist, the presumption itself must also cease to exist. Of course it is still the law that where a wife in the presence of her husband and under his coercion commits an act which would under other circumstances be an offense, she should not be considered as guilty of any offense; but there would be no presumption of law in such a case that she acted under the coercion of her husband; but the question as to whether she did in fact act under his coercion, or not, would be a question of fact for the jury, and should be left to the jury. In this connection, see the reasoning in the case of *Norris v. Corkill*, ante, p. 409.

The defendant also claims that the court below erred in refusing to give and in giving certain instructions with reference to insanity. Now there was really no sufficient evidence introduced to make instructions with reference to insanity applicable to this case. But even if there were any such evidence, still the court below did not err with reference to the instructions given and refused. The claim of the defendant

in this respect is completely answered by the case of *The State v. Nixon*, ante, p. 205, *et seq.*

IV. The defendant claims that the court below committed error in omitting and neglecting to instruct the jury upon the several degrees of manslaughter. We think the court below might very properly have given instructions of this kind; and yet we cannot say that the court below committed material error in not doing so. First, the court was not asked to do so; second, the evidence was not such as to clearly make it the duty of the court to do so; third, the court instructed the jury in full detail with reference to all the elements constituting murder in the first degree and in the second degree, and then instructed the jury that—

"In no event will you be warranted in convicting her [the the defendant] of either degree of the offense charged, unless you are satisfied that she was guilty of murdering Thomas McGuire, at the time and place and in the manner and by the means stated in the information, to wit, on or about the 25th day of last November, in this county, and by shooting and killing him with a pistol loaded with gunpowder and ball."

And the court also instructed the jury fully with reference to the reasonable doubts to which the defendant is entitled, and with reference to insanity, and with reference to coercion by her husband, and indeed with reference to all things to which the defendant was entitled; and the defendant was undoubtedly guilty. She was probably guilty of murder in the first degree; and was found guilty of murder in the second degree by the jury. If there was room to doubt her guilt in this degree, we might possibly think that there was really error committed by the court in failing to instruct the jury with refference to the several degrees of manslaughter. Indeed, in such a case, there would be error. But such is not this case. As before stated, we do not think that the evidence in this case required that the court should give any such instructions. Instructions in a case of this kind as well as in other cases, should run to the facts as detailed by the evidence, and to all probable interpretations of them, but not to questions which,

though possible under the information, are not in fact presented by the evidence. ( *The State v. Rhea*, 25 Kas. 581.)

There was no necessity for the court to instruct the jury with reference to the punishment which the law prescribes for murder in the first or second degree. But still we do not think that the court committed any material error by giving instructions with reference to this matter.

V. No error was committed by the court in permitting the jury to separate. The court in a criminal prosecution for murder in the first degree, as well as in other cases, may permit a separation of the jury after the instructions are given, and before the arguments of counsel are fully completed, and indeed at any time before the jury are allowed to retire under the charge of their bailiff for final deliberation upon their verdict. ( *The State v. McKinney*, 31 Kas. 571, 581.)

VI. When the jury retired for deliberation, one of the jurors became separated from the other jurors for a few minutes; but it appears affirmatively from the evidence that nothing prejudicial to any of the substantial rights of the defendant occurred by reason of such separation. The juror spoke only to one person in the mean time, and that person was the counsel for the defendant; and nothing was said between them with reference to the merits of the case. The juror simply inquired where the jury room was, and the counsel answered that he did not know. No error of the court was committed with reference to this matter.

VII. It is claimed by the defendant that the county attorney was guilty of misconduct; but really no misconduct was shown, and we do not think it is necessary to further consider this question.

VIII. It is further claimed that the jury were not kept in a private or convenient place. It appears, however, from the evidence, that they were kept in about as good a place as could be found anywhere within the vicinity of the court house; and it does not appear that any right of the defendant was prejudiced in this regard.

IX. The defendant also claims that she should have had a

new trial on the ground of newly-discovered evidence; but it does not appear that the evidence was newly discovered, or that sufficient diligence had been exercised to obtain the same; and if it had been obtained, it would be merely cumulative.

We think that the defendant has had a fair trial; that the verdict is right; that her sentence is just; and, not perceiving any material error committed by the court below, its judgment will be affirmed.

All the Justices concurring.