**THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CLOUD v. E. J. VICKERS.**

### No. 11,590.  (61 Pac. 391.)

1. ACTION FOR DEATH—*Pleading—Verdict of Coroner's Jury.* A petition alleged that plaintiff was damaged by the negligent adoption, by the board of county commissioners, of defective plans for the construction of a bridge, in consequence of which the plaintiff's husband, while working under the same while it was building, was killed by the fall of the structure. The verdict of the coroner's jury, returned after an inquest over the body of the deceased, was attached to the petition, in which the cause of the death was found to be an "accidental falling of a stone-arch bridge." *Held*, that the finding of the coroner's jury, made a part of the petition, did not narrow the alleged cause of the death so as to confine it to an unforeseen and fortuitous circumstance.

2. ——— *Defective Bridge—Notice to County.* The board of county commissioners was notified, before the plans and specifications for the bridge were adopted by it, that a bridge built in accordance therewith would not stand, and there was testimony of competent engineers that the plans were inadequate. *Held*, that such information was sufficient notice to the chairman of the board within the requirements of the statute.

3. ——— *Relation of Contractor.* The contractor being required to build a bridge upon a defective plan adopted by the county, for which reason it fell, the latter cannot avail itself of the defense that the negligent acts of an independent contractor caused the damages complained of.

4. ——— *Impeaching Testimony.* It was sought to impeach a witness for plaintiff by showing that he made statements before the coroner's jury contradicting his testimony given in this case. *Held*, that it was competent for plaintiff to prove that before the accident the witness made statements in harmony with his testimony at the trial. *The State v. Petty*, 21 Kan. 54, followed.

5. ——— *Instructions—Practice Disapproved.* The practice of incorporating the entire opinion of this court into an instruction is disapproved; the trial court ought not to embody the language used by this court in an instruction, prefaced with a statement that this court is the authority from which it is derived.

Error from Cloud district court; F. W. STURGES, judge. Opinion filed June 9, 1900. Affirmed.

*L. J. Crans*, for plaintiff in error.

*R. W. Turner*, and *Pulsifer & Alexander*, for defendant in error.

The opinion of the court was delivered by

SMITH, J. : A. L. Vickers was killed by the falling of a stone-arch bridge which, at the time, was being erected by J. M. Hass, under a contract with Cloud county. The deceased was a common laborer. He assisted in the removal of certain wooden half-circles, over which an arch of the bridge had been built, when the latter collapsed, causing stone and earth to fall upon him. This action was prosecuted by E. J. Vickers, his widow, to recover from the county her pecuniary loss by reason of his death. She alleged that the members of the board of county commissioners entered into a contract with Hass, and adopted plans and specifications for a bridge which were defective and dangerous ; that they were informed that a bridge built in accordance with such plan would not stand ; and further, that the board of county commissioners retained to itself supervision of the work, and appointed one William McCall to superintend the same, and that the latter negligently omitted to notify Vickers of the dangers surrounding him. The contract between the county and J. M. Hass was attached as an exhibit to the petition ; also the verdict of a coroner's jury, returned after an inquest over the body of the deceased, in which it was found that his death was caused by an accidental falling of the bridge under which he was working at the time.

The answer of defendant below alleged contributory negligence on the part of Vickers, in that he carelessly and recklessly dislodged and removed stones compos-

ing a part of the bridge upon which he was then working under the direction of said Hass. Verdict and judgment were rendered for the plaintiff.

The case has been in this court before. (*Vickers v. Cloud County*, 59 Kan. 86, 52 Pac. 73.) In the former decision it was held that the statute giving a right of action applies as well to those who are rightly under the bridge as to those who are traveling over it; and further, that the statute, being remedial in its nature, should be liberally construed.

Counsel for plaintiff in error contends that the court below, in passing on a demurrer filed by the county, considered as a part of the petition certain offers of proof made by the plaintiff when the case was first tried, in 1895, as appears from the case-made of that trial incorporated in the record before us. We do not understand, however, that this offer of proof was regarded as a part of the petition at the last trial. In the original suit the members of the board of county commissioners were joined as defendants with the county. The court sustained a demurrer interposed by defendants on the ground that the causes of action were improperly joined, but permitted the plaintiff to allow her original petition in the case to stand against the board of county commissioners. There is nothing in this record which definitely points out that the court, on the hearing of the demurrer, considered anything but the allegations of the petition on which the last action was tried.

It is contended that the demurrer should have been sustained, for the reason that, notwithstanding the specific allegations of negligence on the part of defendant below, the verdict of the coroner's jury attached to the petition as an exhibit showed, as a result of the inquest, that the jury found that the cause of the death

was an "accidental falling of a stone-arch bridge."
It would be a strained meaning to give the word "ac-
cidental" to say that its use in such a petition, coup-
led with the various averments of negligence charged
against the county, narrowed down the alleged cause
of the death by making it due to something unfore-
seen and fortuitous.   The setting out of this coroner's
verdict was wholly unnecessary and surplusage ; yet,
considering it as properly a part of the petition, we
do not think the cause of the death stated therein con-
trols the other allegations of the petition ; nor can we
say that the use of the word "accidental," so em-
ployed, is inconsistent with the accompanying aver-
ments that the deceased was killed through the
negligent acts of the defendant below.

There was abundant proof that both the chairman
and members of the board of county commissioners
had express notice at the time the plans and specifi-
cations for the bridge were adopted that the same were
defective and dangerous.   This information was given
them by Mr. Hass, who built the bridge.   He told
them, if constructed on the plan adopted, it would not
stand ; and several competent civil engineers, in con-
firmation of Mr. Hass's prediction, testified, after ex-
amining such plan and specifications, that the same
were wholly inadequate, and gave as their opinions
that a bridge built in accordance therewith would fall.

This knowledge, brought home to the members of
the board before the defective plans were adopted,
was sufficient notice to the chairman, within the re-
quirements of the statute.   The bridge was contracted
to be built according to plans and specifications at
variance with the principles of applied mechanics.
Requiring it to be so built was notice in advance that
the contractor must necessarily erect an unsafe bridge.

Nor can the defense avail that the work was committed to the charge of an independent contractor, over whom the county had no control. Inasmuch as the contractor in this case performed the work in conformity to defective plans, and had no option to deviate therefrom, his course was marked out for him by the county board. He did what he was employed to do. The adoption by the board of such defective plans brings the case within the exception to the general doctrine that the negligent acts of an independent contractor, by which a servant of the latter is injured, exonerates the person who has let the contract. (*Water Company v. Ware*, 16 Wall. 576, 21 L. Ed. 485 ; *City of Chicago v. Langlass et ux.*, 66 Ill. 361 ; *Jordan v. The City of Hannibal*, 87 Mo. 673 ; *Prideaux and wife v. The City of Mineral Point*, 43 Wis. 513 ; *Gould v. City of Topeka*, 32 Kan. 485, 4 Pac. 822.)

Haas, the contractor, testified on behalf of plaintiff below. By way of impeachment, testimony given by him before the coroner's jury was read, tending to contradict his statements made upon the witness-stand. To corroborate him plaintiff introduced testimony tending to show that before the accident Haas had made statements concerning the defective condition of the bridge in harmony with the testimony last given by him in this cause. This testimony was properly admitted. In *The State v. Petty*, 21 Kan. 54, 59, 60, this court said :

"It is the general and almost universal rule, that evidence of what the witness has said out of court cannot be received to fortify his testimony. Corroborative statements of this character are very easy of manufacture, and, if admitted, might oftentimes be made the means of great imposition. To this general rule, however, there are exceptions. Thus, when a witness is charged with giving his testimony under

the influence of some motive prompting him to make a false or colored statement, then it may be shown that he made similar declarations at a time when the imputed motive did not exist; and where there is evidence in contradiction, tending to show that the account of the transactions given by the witness is a fabrication of a late date, it may be shown that the same account was given by him before its ultimate effect and operation, arising from a change of circumstances, could have been foreseen. (1 Whart. Ev. § 570; *Robb v. Hackley*, 23 Wend. 49; *The People v. Finnegan*, 1 Park. Cr. Rep. 147; *Dailey v. The State*, 28 Ind. 285; *Conrad v. Griffey*, 11 How. 480, 2 Phill. Ev. H. & E.'s Notes, 979.)'' See, also, *State v. Dennin*, 32 Vt. 158; *Coffin v. Anderson*, 4 Blackf. (Ind.) 395; *Henderson v. Jones*, 10 Serg. & R. 322.

We have read the instructions given, and think the law of the case was fully presented to the jury. The first instruction incorporated in full the opinion of this court. We do not commend this practice, and it ought to be discouraged. The jury are apt to be misled by it, especially when facts are stated or commented upon in the opinion. The jury should receive the law from the trial court. The expressions of this court are for the guidance of the trial court, and we consider it bad practice to embody our language in an instruction when it is prefaced with a statement that this court is the authority from which it is derived. Here, however, no prejudice has resulted to plaintiff in error which counsel has pointed out.

The findings of the jury, taken together, are strongly against the defendant below, and they seem to be well supported by the evidence. The verdict was moderate in amount. Several of the assignments of error set out in the brief of plaintiff in error do not refer to the pages of the record. These we cannot consider.

The judgment of the court below will be affirmed.