THE NATIONAL CEREAL COMPANY, *Ltd.*, V.
M. ALEXANDER.

No. 14,984 . (89 Pac. 923.)

SYLLABUS BY THE COURT.

1. CONTRACTS—*Fraud—Pleading and Proof—Variance.* Under the facts of this case it is held that a discrepancy between a pleading and the proof offered to sustain it did not amount to a material variance, and that the adverse party was not misled to his prejudice.

2. EVIDENCE—*Corroborative Testimony to Fortify an Impeached Witness.* After the introduction against the plaintiff in an action of impeaching evidence tending to show that he had been silent concerning his claims when most likely he would have asserted them had grounds existed, and leading to the inference that they were of recent fabrication, he may be corroborated by proof of previous consistent claims and statements made and consistent conduct exhibited at a time when their ultimate effect could not in the nature of things have been foreseen.

Error from Shawnee district court; ALSTON W. DANA, judge. Opinion filed April 6, 1907. Affirmed.

*George E. Stoker,* for plaintiff in error.

*Quinton & Quinton,* and *Arthur J. Bollinger,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: Two principal questions are presented by the petition in error in this case, one relating to a variance between the pleading and the proof, and the other relating to the admissibility of testimony.

The plaintiff entered into negotiations with the defendant for an agency to sell a cereal food manufactured by the defendant. The transaction involved the purchase of one thousand dollars worth of stock in the defendant company. The plaintiff, a resident of Topeka, went to the headquarters of the defendant at Battle Creek, Mich., to investigate the proposals made to him. There a contract was drawn up, but being still in doubt the plaintiff took it home with him for further consideration before signing. Afterward he indicated a willingness to close with the defendant, who thereupon sent an agent to Topeka for the purpose of completing the proposed arrangement. The plaintiff and the defendant's representative, a Mr. Boyle, met, a contract was signed, the price of the stock was paid, a certificate of stock was delivered, and other steps were taken to install the agency. The plaintiff claims the contract agreed upon gave him the territory of the state of Kansas and Jackson county, Missouri. Upon making an attempt to conduct the business of the agency he discovered that he was limited to the state of Kansas only. He promptly rescinded, returned the stock, demanded a return of his money, and, upon the defendant's refusal to pay, brought suit. The petition contains the following allegations:

"Plaintiff brought said contract with him to the city of Topeka, and thereafter formally accepted the terms proposed and agreed to sign the same, and afterward, to wit, on the 2d day of March, 1903, the said defendant came to the city of Topeka for the purpose of having said contract signed, and took the contract which had been delivered the plaintiff for the purpose of making a duplicate of the same, and that, upon the same day, the said defendant exhibited to this plaintiff the contract, which they had made, and pretended to sign the same, and the plaintiff at the time, believing that it was the same contract, a duplicate having been taken by the defendant, signed the same, and paid one thousand dollars, as provided by the terms of said contract.

"And afterward the plaintiff discovered that in the signing of said contracts by him and the company that the said defendant had wilfully and fraudulently substituted an entirely different contract from the one agreed upon, written out and accepted by the parties; and that by reason of such wilful and fraudulent substitution this plaintiff at the time, without any knowledge of the wrongful act on the part of the defendant and believing that the contracts were the ones which had been agreed upon, signed the contract as presented, which limited his territory to the state of Kansas only. That said substituted contract was not the one by him agreed upon, and was not the consideration of the payment by him to said defendant of one thousand dollars, which he paid to the defendant."

On the trial the plaintiff's evidence tended to show that Boyle brought with him to Topeka a draft of a contract which had been executed on behalf of the company. This draft Boyle dated in plaintiff's presence, and delivered to plaintiff as his copy. Plaintiff signed the draft he had brought home from Battle Creek and delivered it to Boyle. Each draft consisted of two unattached sheets of paper, the first containing the description of the territory covered and the second containing the signatures. When the plaintiff signed the draft which he had brought home from Battle Creek its original form remained unchanged. He testified that the substitution in that copy was made after the paper left his hands. But he further testified that the supposed duplicate which Boyle brought to Topeka and delivered to him when he signed the other did not cover Jackson county, Missouri, as he discovered when he examined it after trouble arose.

The dating of one copy of the contract, the signing of the other, the exchanging of the duplicates, the payment of the money and the delivery of the stock certificate constituted in effect a single transaction, consuming about fifteen minutes of time, and occurred in a room at a hotel.

The plaintiff admitted to be incorrect the statement

in his petition that Boyle, after coming to Topeka, took the draft of the contract which plaintiff had brought from Michigan for the purpose of making a duplicate, and admitted to be incorrect the statement that Boyle signed, on that day, a copy of the contract which he exhibited, pretending it to be genuine.

It is said the plaintiff undertook to set forth in his petition the precise manner in which the fraud was committed. The first step was to take the plaintiff's draft of the contract, ostensibly for the purpose of making a duplicate. The next step was to exhibit a substituted draft as the true one, and to sign it as if genuine. As a result the plaintiff signed a substituted draft. To disprove these allegations the defendant did not need to extend its evidence beyond the time the plaintiff affixed his signature. The defendant's witnesses lived in Michigan and their testimony had been taken by deposition.

Recognizing the cogency of this argument, the court is inclined, nevertheless, to the view that the discrepancy between the pleading and the proof was not vital and that the defendant's testimony covered the point upon which the case necessarily turned. The real specification of fraud was a substitution of documents. The details of the prestidigitation were not important, and the petition need not have attempted to expose them. In civil actions only the substance of the issue need be proved, and in this case it was proved by showing a state of facts which opened the way to the inference that a substitution had occurred.

It was not important that, instead of taking the plaintiff's draft of the contract to make a duplicate, Boyle brought with him a copy for use as a duplicate. This spurious duplicate was exhibited to plaintiff as a genuine paper—was actually delivered to him as truthful written evidence of the contract. Boyle did some writing at the time. Although he did not sign, he did fill in a date, thus making the act of writing contribute

to the apparent honesty of the transaction.   The exchange of documents took place at the same time.   The plaintiff was entitled to a duplicate containing Jackson county, Missouri, as a part of the description of the territory involved.   He was given one which omitted Jackson county, Missouri, so that at the time of signing up with the plaintiff a substitution *pro tanto* was effected.   The plaintiff was defrauded then and there, and it was of small consequence when the top sheet of the genuine draft the plaintiff had signed was shifted.

There was no dispute in the evidence that the plaintiff was given, at the hotel, the kind of a copy he said he received.   The decisive question in the case was if he brought home from Battle Creek, kept in his possession, produced at the hotel, and signed, a different kind of a document.   If he did, there could be no doubt of a substitution.   If he never had the kind of a paper he claimed he was given at Battle Creek, substitution was impossible.   Upon this question the defendant produced all the evidence at its command.   From these considerations it follows the variance was not material and the defendant was not misled to its prejudice.

On cross-examination of the plaintiff he was asked if he had not commenced and dismissed a previous suit against the defendant, and he admitted that he had done so.   The defendant then introduced in evidence the petition in the former suit, which counted solely upon a failure to perform, and made no reference whatever to any fraudulent substitution.   This petition was filed after the date upon which the plaintiff claimed he discovered the fraud which was made the basis of the second suit.   Thereupon the plaintiff produced a witness, J. S. Warner, who testified that, at a date between the time the plaintiff returned from Battle Creek and the time Boyle came to Topeka, the plaintiff exhibited to him and asked his advice concerning a contract which he contemplated making with

the defendant. The witness described the contract which the plaintiff showed him and stated that it differed from the one attached to the defendant's depositions (and claimed by the defendant to be the original signed by the plaintiff) in that the description of the territory involved included Jackson county, Missouri, in addition to the state of Kansas. The plaintiff had already testified without objection that he had shown to Warner the contract given him at Battle Creek by Boyle, and had taken Warner's advice concerning it.

The defendant claims Warner's testimony was inadmissible. The introduction in evidence of the plaintiff's first petition tended to impeach him by showing that he had failed to charge a fraudulent substitution at a time when most likely he would have done so had grounds existed, and to lead to the inference that the fraudulent substitution theory was fabricated subsequently to the commencement of the first suit. The effect of the impeachment was greatly intensified when the defendant later read Boyle's deposition, wherein he stated there never had been any reference whatever in any of his negotiations with the plaintiff to the inclusion of Jackson county, Missouri, in the contract, and that he had never submitted to the plaintiff any form of contract which included that territory. Under these circumstances the testimony of Warner falls fairly within the scope of the exceptional rule permitting the fortification of an impeached witness by showing consistent claims and statements made and consistent conduct exhibited at a time when their ultimate effect could not in the nature of things have been foreseen. (*The State v. Petty,* 21 Kan. 54, 59; *The State v. McKinney,* 31 Kan. 570, 3 Pac. 356; *The State v. Hendricks,* 32 Kan. 559, 4 Pac. 1050; *Cloud County v. Vickers,* 62 Kan. 25, 61 Pac. 391; *Stirn v. Nelson,* 65 Kan. 419, 70 Pac. 355; 2 Wig. Ev. § 1129 *et seq.*)

The fact that before preliminary negotiations ended the plaintiff had in his possession and submitted to

Warner a contract including Jackson county, Missouri, which he then claimed he had received from the defendant, strongly corroborated the plaintiff's story, and strongly tended to foreclose the inference that the whole matter of a contract including Jackson county, Missouri, was fabricated.

Some minor claims of error are discussed, but none of them is substantial, and the judgment of the district court is affirmed.