No. 28,422.

THE STATE OF KANSAS, *Appellee,* v. CLYDE PITTS, *Appellant.*

(271 Pac. 296.)

Opinion filed November 3, 1928.

*A. J. Herrod,* of Kansas City, for the appellant.

*William A. Smith,* attorney-general, *Roland Boynton,* assistant attorney-general, *Arthur J. Mellott,* county attorney, and *H. J. Emerson,* deputy county attorney, for the appellee.

The opinion of the court was delivered by

BURCH, J.: Clyde Pitts was convicted of rape, and appeals. The principal question involved is whether the court erred in admitting evidence of the victim's statements that defendant was her assailant.

Agnes Crowley was a telephone operator at the Rosedale exchange. On the night of March 30, 1927, while she was walking home after her day's work, she was seized from behind, carried to a vacant lot, and was ravished. The crime was committed between 9:15 and 9:30 p. m. It was raining. Agnes got up and ran to her home, which was in the next block. Her shoes were muddy, and the slicker she wore was muddy. She had lost her hat, and her hair was muddy. Her sister, Mrs. Maloney, and her brother-in-law were at her home when she arrived. She was crying. She told her sister a man had grabbed her, and went into her bedroom. A physician was called, who examined her. He found her clothes were wet, her

hair was wet and muddy, she had been attacked sexually, and she was bleeding from the vaginal region. The physician fixed the time of his visit at 9:30 to 10 o'clock. The sister testified Agnes arrived home "around 9:30," and testified the doctor came in about twenty or twenty-five minutes.

The police were notified at the same time the doctor was called. At about 11:30 p. m. an officer, Edward Powers, and Ira Mathias came to the house, and had a conversation with Agnes. Afterward they went to the vacant lot, found Agnes' hat, and noted conditions at the spot where the crime was committed. Detectives Harry E. Smith and John Mogle were assigned to the case, and they visited Agnes about 10 o'clock the next morning, March 31. They found her in bed. She was sick and nervous, and they did not disturb her. The next day, April 1, Smith and Mogle visited her, and had a conversation with her. Immediately after the conversation Smith arrested defendant and called Agnes to the police station. She was placed in one room and defendant was placed in an adjoining room, in such positions neither could see the other. The door between the two rooms was left slightly open, and an officer engaged defendant in conversation. As soon as Agnes heard defendant's voice she went into the room where he was, identified him, and accused him of the crime. Defendant's preliminary examination occurred June 8, 1927.

The trial commenced January 9, 1928. At the trial a witness was called to prove the location of streets, alleys and buildings in Rosedale, and Agnes was then placed on the witness stand. In her direct examination she told what occurred from the time she left the telephone building until she reached home, without relating conversations except what was said during the encounter with defendant. On cross-examination defendant brought out the fact that she had made complaint when she reached home, and introduced the subject of her inability to identify defendant as her assailant. On redirect examination the witness told, without objection, of her identification of defendant at the police station, and the following then occurred:

"Q. Did you tell Mogle and Smith who it was made this attack on you? (Objected to by defendant as leading. Objection overruled.) A. Yes, sir.

"The Court: I think the jury would like to know what time she told them that. May I ask this?

"Q. By the Court: Did you name anyone that night as your assailant after it occurred? A. Yes, sir.

"Q. The Court: Had you named this defendant? A. Yes, sir.

"By Mr. Myers [assistant county attorney]: Q. What name did you give? A. I only know him as 'Big Boy.' I used to call him 'Big Boy.'

"Q. Who was 'Big Boy'? A. Clyde Pitts.

"Q. Who did you tell them that night had attacked you? A. I told them 'Big Boy' did.

"Q. You told whom? A. My sister, when I came in the house.

"Q. Who else? A. I told her—my brother, he wasn't in the room at the time—and Mr. Mathias and Mr. Powers.

"Q. Did you tell Mr. Smith and Mogle, the detectives, when they came to see you next day? A. Yes, sir."

It will be observed the only objection interposed to this testimony was that the first question, which did not call for the name of the assailant, was leading.

On recross-examination, defendant laid the foundation for impeachment of the witness by confronting her with her testimony given at the preliminary examination, the record of which was subsequently introduced in evidence. The material portions of the recross-examination follow:

"Q. Yesterday the court asked you a question, if I remember correctly, and you told him when you went into the house you told your sister it was Big Boy. Is that correct? I mean, did you testify that way yesterday? A. Yes.

"Q. Do you remember these questions and these answers made at the preliminary referring to after you went in the house:

" 'What did they say, if you remember? A. She just—I don't know what they said; they called the doctor and the police, I think that was all.

" 'Q. Did you ask who it was? A. Yes; they asked me who it was.

" 'Q. What did you tell them? A. I told them I didn't know.'

"Q. Were those questions asked you, and did you make those answers? A. I don't remember.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Do you recall what you did tell your brother-in-law after you got in the house some time later on, about whether or not it was the defendant? A. I wasn't talking to my brother-in-law.

"Q. You weren't talking to him? A. I don't believe I was; I don't remember. I was talking to my sister. I didn't talk to him, because he called the doctor right away.

"Q. When you told, whoever it was you told in the house, anything about Big Boy, or you thought it was Big Boy—was built like Big Boy? A. I told him it was Big Boy himself.

"Q. Did you tell them it was Big Boy? A. Yes.

"Q. You told them it was Big Boy? A. Yes.

"Q. Do you remember these questions being asked you and you made these answers:

" 'Q. You didn't think it was Big Boy? A. I didn't tell him it was; I said it looked like Big Boy. I didn't get a good look at him.

" 'Q. You didn't tell him it was Big Boy, Miss Crowley?   A. No, sir.'

"Q. Were those questions asked you, and did you make those answers?   A. I don't remember.

"Q. Would you say you did not?   A. I don't remember."

We have then this situation: Agnes testified that defendant committed the crime. She also testified that at the first opportunity, and thereafter until she confronted defendant at the police station, she named him as her assailant. She was impeached by her statements at the preliminary examination that on arriving home she did not say defendant was her assailant, and she did say she did not know who her assailant was. The state met the situation by calling all the persons to whom Agnes had said defendant was her assailant. Mrs. Maloney testified, without objection, as follows:

"When Agnes got home she was crying.

"Q. Did she tell you who had attacked her?   A. Not at that time.

"Q. Did she at a later time?   A. Yes.

"Q. How much later was it?   A. After the doctor came she told me it was Big Boy."

When Mathias, Smith, Powers and Mogle were asked whether Agnes told her who her assailant was, objections were interposed on the ground the questions called for hearsay. The objections were overruled, and each witness testified she named "Big Boy."

Defendant denied he committed the crime, and produced testimony accounting for his presence elsewhere than at the scene of the crime during the period within which the crime was committed.

It may be that in view of the physical and mental condition Agnes was in when she reached home, defendant did not object to her testimony and the testimony of Mrs. Maloney concerning prompt accusation of defendant, because the testimony was regarded as admissible under the *res gestœ* doctrine that the horrible event was speaking through her. However that may be, her statement to her sister that it was "Big Boy" was admitted as proper evidence, the same as her testimony in chief that defendant was her assailant. When she was impeached, it was proper to rehabilitate her as a witness by showing that long before the contradictory statement was made, and for 36 hours immediately following commission of the crime, she consistently made the same accusation to Mathias, Smith, Powers and Mogle.

"It has been seen (*ante*, § 1122) that, under some circumstances, and with limitations differently accepted in different jurisdictions, a witness whose testi-

mony has been impeached may be corroborated or rehabilitated by evidence of his similar statements made at other times. This principle has been resorted to for admitting the present sort of evidence. The story of the woman is corroborated by showing that she told the same story at the time of making complaint. . . .

"Since the purpose is to show that she tells the same story as on the stand, the whole of the complaint as made by her, with its terms and details, is to be received, and not the mere fact of the complaint." (2 Wigmore on Evidence, §§ 1137, 1138.)

The principle involved has been recognized in the decisions of this court in the following cases: *State v. Petty,* 21 Kan. 54; *State v. Hendricks,* 32 Kan. 559, 4 Pac. 1050; *Cloud County v. Vickers,* 62 Kan. 25, 61 Pac. 391; *Stirn v. Nelson,* 65 Kan. 419, 70 Pac. 355; *Cereal Co. v. Alexander,* 75 Kan. 537, 89 Pac. 923; *Peoples State Bank v. Hill,* 125 Kan. 308, 263 Pac. 1045.

None of the limitations on admission of this kind of testimony accepted by this court was transgressed. It is not material that, when the corroborative testimony was admitted, impeachment of the witness had not technically been completed by formal reading into the record of the testimony given at the preliminary examination. Neither is it important that in admitting the testimony as corroborative the court had in mind identification. The material matter is that the testimony was corroborative and was properly admitted.

Defendant was a single man, thirty years old. He was six feet tall, weighed 210 pounds, and from his admissions on cross-examination, was quite worthless. Drinking, gambling, vagrancy, and disturbing the peace had caused his arrest numerous times. The state was unsparing in exposing his delinquencies, and no instruction was given the jury that the evidence concerning them could be considered only as it might affect his credibility. No such instruction was requested. An instruction of that kind is not one which is necessary for the information of the jury in giving its verdict. (R. S. 62-1447.) Such an instruction belongs to the cautionary and not to the indispensable class, and omission to give it is not ground for new trial, in the absence of request.

Other complaints regarding the proceedings have been considered, and the court is satisfied nothing occurred which prejudicially affected defendant's substantial rights.

The judgment of the district court is affirmed.