No. 40,185

In the Matter of the Estate of Anton Kafka, Deceased. CASCELIA M. KAFKA, *Appellant,* v. CLARA M. KAFKA, MARTIN KAFKA and THE HONORABLE GERHARD HAASE, Probate Judge of Ellsworth County, Kansas, for all adverse parties, *Appellees.*

(299 P. 2d 77)

Opinion filed June 30, 1956.

*John V. O'Donnell*, of Ellsworth, argued the cause and *V. E. Danner*, of Ellsworth, was with him on the briefs for the appellant.

*George D. Miner* and *Paul L. Aylward*, both of Ellsworth, were on the briefs for the appellees.

The opinion of the court was delivered by

SMITH, C. J.: This is a proceeding to admit a lost or destroyed will to probate. The probate court and on appeal the district court refused to admit it. The proponent has appealed.

The petitioner was Cascelia, the daughter of Anton Kafka. Her mother, the first wife of decedent, had predeceased him, leaving petitioner and a brother Martin. Decedent's second wife Clara survived him. There were no children by the second marriage.

The petition alleged the identity of petitioner; that she was an heir at law and a beneficiary under decedent's last will; that on or about February 20, 1953, he made his will; that it had a legal existence and remained unrevoked at the time of his death and could not be found; that a copy of it was attached to the petition; that petitioner was an innocent beneficiary and the application for probate was made by her within ninety days after she had knowledge of it; that the heirs and beneficiaries under the will were Clara M. Kafka, widow; Cascelia M. Kafka, petitioner, a daughter; and Martin M., his son; the value of the estate was personal property $5,000, real property $63,900; and the appointment of an executor of the will was necessary to conserve the estate.

A copy of the will was attached. It gave an eighty to Martin; also a half section to Cascelia, together with the household goods, provided she should pay Martin $5,000; that his wife Clara should have an undivided one-half of the minerals and royalty under the half section and Cascelia and Martin should each have a one-fourth interest; all the residue of his estate was divided between Martin and Cascelia in equal shares. Martin was appointed executor. The petition was set for hearing on April 18, 1955. On April 16, 1955, Clara, the widow, filed a written defense. In it she stated the alleged will was destroyed by decedent during his lifetime with the

intention of revoking it and it was thereby revoked; that the petitioner on November 30, 1953, filed in probate court a petition for the appointment of an administrator of the estate, alleging that decedent died intestate, she knowing then of the execution of the instrument she was offering for probate; that on December 9, 1953, an order appointing Clara administratix was made; an order of final settlement was subsequently made and Cascelia appeared in court and approved the order of final settlement; the probate court ordered disbursement of the estate and determined the heirship and Cascelia accepted her check and cashed it.

The answer further alleged that during all the times in question Cascelia had notice of the execution of a will by her father during his lifetime, which he destroyed during his lifetime; and she had access to a copy of it during all the time; and it had not been offered for probate within one year after the death of decedent on November 25, 1952, nor within ninety days after she had knowledge of it.

The probate court refused to admit the will to probate. The petitioner appealed to the district court. There the matter was tried *de novo.*

The trial court found many of the facts about as they were set out in the pleadings to which reference has already been made. The trial court further found Clara and Cascelia had conveyed their share of the quarter section to Martin and Martin had conveyed his share of the half section to Clara and Cascelia; that the copy of the will offered for probate was an unsigned copy of a document entitled "Last Will And Testament Of Anton Kafka" which was found by Cascelia on December 18, 1954, in a dresser drawer at Anton's farm home; that it was drafted by a law firm on February 20, 1953, and duly executed in May, 1953; that Anton and Clara each made a will, the occasion being a contemplated trip to California; that the wills were left in the law office until May, 1953, when they obtained them. The trial court then found "The Anton Kafka will was taken to a wash house where there was a small coal and wood stove and Mr. Kafka placed his will in the stove and burned it. . . . Mrs. Kafka was the only person present when her husband took his will to the wash house"; that prior to November 30, 1953, Cascelia had knowledge that the lawyers had drawn her father's will; that at no time was any attempt made to have such copy produced in probate court and no request was made by any of the parties prior to March 16, 1955; that Anton's will, dated

February 20, 1953, was intentionally destroyed, with the intention to revoke it. Conclusions of law were as follows:

"1. The Last Will and Testament of Anton Kafka, deceased, dated February 20, 1953, an unsigned carbon copy of which has been offered for probate as a lost or destroyed will of Anton Kafka, was burned and destroyed by Anton Kafka during his lifetime with the intention to revoke his will.

"2. That Cascelia M. Kafka did not make her application for the probate of the lost or destroyed will of Anton Kafka within 90 days after she had knowledge of such will and access thereto and that the said Cascelia M. Kafka is now estopped from now offering for probate such instrument.

"3. That the Petition of Cascelia M. Kafka to admit to probate a lost or destroyed will of Anton Kafka, deceased, should be denied and the costs of this action taxed to the said Cascelia M. Kafka."

The petitioner filed a motion to set aside findings of fact and conclusions of law and for a new trial on the grounds of abuse of discretion, misconduct of prevailing party, accident and surprise, petitioner not afforded a reasonable opportunity to present her evidence, erroneous rulings, decision and judgment given under the influence of passion and prejudice, decision contrary to evidence and discovery of new evidence. These motions were both overruled. The petition to probate the lost and destroyed will of Anton was denied.

The specifications of error were that the trial court erred in overruling the objection of appellant to the testimony of an incompetent person; in overruling the objection of appellant to the introduction of hearsay testimony; in overruling appellant's motion to set aside findings of fact and conclusions of law; in overruling appellant's motion for a new trial; in ordering that the petition of appellant to admit to probate a lost or destroyed will be denied.

Petitioner states the questions to be:

"1. Did the appellant make her application for the probate of a lost or destroyed will within ninety days after she had knowledge of such will and access thereto and within five years after the death of the decedent?

"2. Was appellant estopped from offering the copy of the will of decedent for probate?

"3. Was the will of decedent, a copy of which was attached to the petition for probate thereof, destroyed by decedent himself or by another person in his presence by his direction, in his lifetime, with the intention and for the purpose of revoking the same?"

The third question stated above should have been: Was there substantial evidence to sustain the trial court's finding that Anton's will was intentionally destroyed and burned by him with the in-

tention of revoking it? If that finding was based on substantial, competent evidence, then we will not disturb it on appeal. (See *In re Estate of Grobbe,* 167 Kan. 640, 208 P. 2d 243.)

We will pass by the question of burden of proof even though G. S. 1949, 59-2228 provides in part:

"No lost or destroyed will shall be established unless it is proved to have remained unrevoked . . ."

The opponent of the probate of this will pleaded that the will had been destroyed by Anton in his lifetime with the intention of revoking it. The cause seems to have been tried on the theory she had the burden of proving that. Anton and Clara had their wills drawn and executed them in a law office just before a trip to California. After they returned they drove together to Ellsworth and Clara remained in the car while Anton obtained both wills from the law office. As to events after they reached home we have the following testimony by Clara: "Q. What happened to the Anton Kafka will then? A. Well, we took it out to the wash house where we had a coal and wood stove that we heated wash water on and we placed it in the stove and burned it." Then ensued an objection by counsel for the proponent on the ground the answer was a statement of a transaction with a deceased person, by Clara in her own behalf, in violation of G. S. 1949, 60-2804. The trial court had no opportunity then to rule on this objection because after some colloquy between counsel and the court, counsel asked Clara "What did you see happen?" And Clara testified "I saw the will burned in the stove by my husband." The trial court then overruled an objection to this and to the earlier question. The latter answer constituted substantial evidence along with other facts and circumstances that the will was burned with the intention of revoking it, as provided in G. S. 1949, 59-611. Such was sufficient to sustain the court's finding. The petitioner argues, her objection to both questions should have been sustained on the ground they violated G. S. 1949, 60-2804. There might be a question about whether the first question called for testimony of a transaction with a deceased person. There is no such question, however, about the second question and answer. The question simply called for her testimony as to what she observed. Such testimony was admissible. (See *In re Estate of Benso,* 165 Kan. 709, 199 P. 2d 523.)

The proponent of the will next argues that the trial court admitted hearsay testimony of Clara that she had before Anton's death

told a third party about the destruction of the will. On direct examination she, in response to a question, stated she told Anton's sister about the destruction of the will. On cross-examination the petitioner went into the same matter more exhaustively. This testimony was admissible because the petitioner was being charged with fabricating her story about destruction of the will. The rule may be found in a note at 140 A. L. R. at page 93, as follows:

"The principal exception to the general rule of evidence that the statements of a witness out of court, consistent with his testimony, are inadmissible, is the one mentioned by Justice Story in Ellicott v. Pearl (1836) 10 Pet (US) 412, 9 L. ed 475, that where the testimony of the witness is assailed as a fabrication of recent date, or as a complaint recently made, proof of the antecedent declarations of the witness consistent with his testimony may be received, in order to repel such imputation."

See, also, *Cereal Co. v. Alexander,* 75 Kan. 537, 89 Pac. 923, and *Peoples State Bank v. Hill,* 125 Kan. 308, 263 Pac. 1045.

We have stated some excerpts from the testimony of Clara. There were other facts and circumstances tending to corroborate her. There were also facts and circumstances as pointed out by the petitioner tending to discredit Clara. It was as already pointed out, the duty of the trial court to weigh all the evidence and to draw reasonable inferences and indulge reasonable presumptions. The trial court did that and reached a decision favorable to Clara. There was substantial, competent evidence to sustain these findings.

The judgment of the trial court is affirmed.