THE STATE OF KANSAS v. JACOB B. SPIDLE.

1. RAPE — *Cross-Examination* — *Proper Question.* At the trial of a criminal action wherein the defendant was charged with having committed rape five times upon the witness, between the 1st day of April, 1888, and the 1st day of August of the same year, and her testimony tended to show that the offenses were committed in the months of February, March and April, 1887, it was proper to ask in cross-examination if she did not swear before the grand jury that the special offense about which she was then testifying was perpetrated on the 13th day of April, 1888.

2. QUESTION — *Error to Forbid Answer.* Where the state at such trial introduced testimony showing that a sister of the prosecutrix saw the crime committed, and the defendant in making his defense asked the sister whether or not she was present and saw the offense, it was error to refuse to allow her to answer that question.

3. LEADING QUESTIONS — *Discretion of Court.* It is largely within the discretion of a trial court to permit leading questions to be asked; yet, unless there is some special or apparent reason why they should be, the court should not permit them to be asked continuously concerning the material and important facts to be proven, when the witness is a willing witness and of full age.

*Appeal from Ness District Court.*

THE opinion states the case.

*J. A. Smith,* for appellant.

*L. B. Kellogg,* attorney general, and *Philo C. Black,* county attorney, for The State; *Smith & Berry,* and *Silas Porter,* of counsel.

Opinion by HOLT, C.: At the May term, 1889, of the Ness district court, the defendant was convicted of rape, and sentenced to ten years' imprisonment in the penitentiary. From this sentence he appeals. The body of the indictment charging the crime is as follows:

"At the January term of said court, 1889, the jurors of the grand jury of said county, duly impaneled, sworn, and charged to inquire and true presentment make of all public offenses against the laws of the state of Kansas, cognizable by said

court, committed or triable in said county, on their oaths do find and present, that on the 1st day of April, 1888, in the county of Ness and state of Kansas, one Jacob B. Spidle did then and there unlawfully, feloniously and carnally know one Alfaretta Salisbury, she, the said Alfaretta Salisbury, being then and there a female person under the age of eighteen years; contrary to the form of the statutes in such case made and provided, and against the peace and dignity of the state of Kansas.

"*Second count:* And the jurors aforesaid on their oaths aforesaid, do further find and present, that the said Jacob B. Spidle, on the 10th day of April, 1888, in the county of Ness and state of Kansas aforesaid, did then and there unlawfully, feloniously and carnally know, ravish and have sexual intercourse with one Alfaretta Salisbury, then and there being a female person under the age of eighteen years and of the age of seventeen years; contrary to the form of the statutes in such case made and provided, and against the peace and dignity of the state of Kansas.

"*Third count:* And the jurors aforesaid on their oaths aforesaid, do further find and present, that the said Jacob B. Spidle, on the 30th day of June, 1888, in the county of Ness and state of Kansas aforesaid, did then and there unlawfully, feloniously and forcibly make an assault upon one Alfaretta Salisbury, and her, the said Alfaretta Salisbury, against the will of her, the said Alfaretta Salisbury, then and there forcibly, unlawfully and feloniously did ravish and carnally know; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Kansas.

"*Fourth count:* And the jurors aforesaid on their oaths aforesaid, do further find and present, that the said Jacob B. Spidle, on the 13th day of July, 1888, in the county of Ness and state of Kansas aforesaid, did then and there, in and upon one Alfaretta Salisbury, unlawfully, forcibly and feloniously make an assault on her, the said Alfaretta Salisbury, being over the age of eighteen years, then and there forcibly and against her will, feloniously did ravish and carnally know; contrary to the form of the statutes in such case made and provided, and against the peace and dignity of the state of Kansas.

"*Fifth count:* And the jurors aforesaid on their oaths aforesaid, do further find and present, that the said Jacob B. Spidle, on the 1st day of August, 1888, in the county of Ness and state

of Kansas aforesaid, did then and there unlawfully, feloniously and forcibly make an assault upon the said Alfaretta Salisbury, and her, the said Alfaretta Salisbury, did forcibly, unlawfully and feloniously and carnally know, without the consent of her, the said Alfaretta Salisbury; contrary to the form of the statutes in such case made and provided, and against the peace and dignity of the state of Kansas."

In this indictment it will be seen that the defendant is charged with having committed the crime of rape upon Alfaretta Salisbury five times between the 1st of April, 1888, and the 1st of August of the same year. The testimony introduced at the trial tended to show that if the crimes were committed at all, it was in February, March and April, 1887. The state elected to stand upon the third count of the indictment, and relied upon the testimony offered to establish the offense in April, 1887. The complaining witness was at that time about seventeen years of age. She was an illiterate girl, and had some trouble with her eyes; but nothing in the record would indicate any feebleness of mind, and she appears to have been healthy and vigorous physically. The defendant, her uncle by marriage, was a married man, and had not yet reached middle age. She stated in her direct examination that he first assaulted her in February, 1887, at a place called the "cheese factory," which her folks occupied as their residence; and assaulted her again the next month, and also in April. In her cross-examination she testified that he had perpetrated the crime of rape upon her five times, although she detailed the circumstances of only four of the alleged crimes. She gave the particulars at length, which it is unnecessary to repeat here in full. It may be stated, however, that her accounts of all the offenses are strikingly alike, even in the details of the accompanying circumstances, and told in very nearly the same language.

The evidence is voluminous. That which was offered to prove the specific offense in April, 1887, upon which the state relied for a conviction, is substantially as follows: The prosecutrix testified that when this particular offense was committed, she was in the cheese factory with her younger sisters and

brothers; one of the sisters, Frances, being at that time fif-
teen years old, another, Tase, eleven, a brother eight, and the
other children younger.   The defendant came into the room
where they all were, grabbed her at once around the body in
the presence of her sisters and brothers, and dragged her into
an adjoining room where there were some beds.   When he
seized her her sisters and ·brothers fled, while she, left alone
with him, cried out, slapped and fought him, pulling his
whiskers and hair, and telling him to behave himself; he
held her by the shoulders and hands, and laughed at her, and
mocked her by repeating everything she said, and finally threw
her down upon the bed and forcibly ravished her.   On cross-
examination she said her clothes were not torn, except one
sleeve of her dress; her body was not bruised, and that the
act of coition did not hurt her—"not one bit"; she was not
afraid, and she knew "Jake" would not hurt her.   She testi-
fied that she told her mother, after the assault in February,
and again the evening of this assault in April; but that she
told no other person except Mr. Stidger, and then not until
January, 1889, a short time before the indictment was found
by the grand jury.

Tase, her eleven-year-old sister, testified in corroboration,
that she was in the cheese factory in April, at the time the
defendant came there; that she saw him grab her ·sister Alfa-
retta, and then she and her sister Frances ran out of the room
up stairs, and looked down through a hole in the floor and
saw the defendant having criminal intercourse with Alfaretta.
She states that her sister was fighting and "hollering."   She
testified in this connection:

"Q. Was he lying still?   A. I don't know how he was
lying.

"Q. Was your sister lying still?   A. No, sir.

"Q. What was she doing; was she holding him?   A. No,
sir.

"Q. Did she have her legs still?   A. Yes, sir."

She also testified that she heard Alfaretta tell her mother
that evening what "Jake" had done; that her mother scolded
her, but that she did not hear Alfaretta tell all of it; Alfaretta

had never said anything to her about it. The state did not call either her mother or the sister Frances. Her mother, called by the defense, testified that Alfaretta had never told her of this affair, nor of any other improper relations with the defendant; and she knew nothing of the charge until the grand jury was investigating it. Her sister Frances, who was at the time of the alleged offense fifteen years old, denies the matter *in toto*. There is considerable testimony to establish the fact that the reputation of the prosecutrix for truth and veracity was not good in the neighborhood where she had been living.

There are a great number of errors complained of, but we shall discuss those only that might be important if this case should be tried again. In the cross-examination of Alfaretta, she was asked the following question:

"Q. I will ask you if you were present when the grand jury drew this indictment, and testified it was on the 13th of April, 1888, that Jake Spidle assaulted you?"

An objection to this question was sustained. The indictment charged that the offenses were committed in the year 1888, beginning April 1, and continuing until August. All of her testimony at the trial related to offenses committed in the months of February, March, and April, 1887. This discrepancy in the dates in the indictment and the proof at the trial, was a proper subject of inquiry, made more important by the fact that nearly two years had elapsed before a criminal prosecution had been commenced. These facts would have justified a reasonably wide range of inquiry on cross-examination, and this question, under the circumstances, was competent and material. It should have been answered.

When Frances Salisbury, sister of the prosecutrix, was placed upon the stand by the defendant, she was asked the following question:

"Q. I will ask you whether or not, during the month of April, Spidle came to your house, and yourself and your sister Tase became scared and ran up stairs, and Spidle got your sister by the shoulders and pushed her in a room, and

you and your sister ran up stairs and saw what was going on down there through the cracks?" [Objected to, and objection sustained.]

This was a proper question, and should have been answered. Alfaretta, in her testimony, had said that Frances was in the room with her when the defendant grabbed her and began to drag her into the other room; her sister Tase had testified that she was also in the room with Frances, and they had run up stairs together, and looked down through the cracks in the floor and saw the crime perpetrated. The defendant was offering to introduce testimony disproving the very fact that had been sworn to by two witnesses for the state, and upon which this verdict must have been largely based. The mere statement of the question and the facts surrounding it are sufficient to show that it was error to refuse to permit the witness to answer.

We notice in the record that leading questions were asked continuously by the state, over the objection of the defendant. We believe that it is a matter largely resting in the sound discretion of the court, when and under what circumstances leading questions may be asked, but there is nothing in the record that would seem to justify the latitude given by the court in this case. The prosecuting witness was at the time of the trial nineteen years of age; was then a married woman, and although she might have had some reluctance in relating the filthy details of what she claimed to have been a crime, yet under the peculiar circumstances of the case she should have been compelled to tell her story without the constant suggestions given her during the trial. During a good part of the examination, concerning the most material and important parts of her testimony, even the language used was put in her mouth to be repeated by her. We cannot approve such a course of examination of anyone of full age, and who seems to have been a willing witness.

We deem these errors material, especially under the evidence for the state, which is very unsatisfactory. Five distinct crimes are charged in the indictment, and the testimony of the

prosecutrix tends to show that there were five distinct offenses of rape perpetrated upon her by the defendant, in the period of little more than two months; that at the time there was no injury to her body, nor were there bruises or marks thereon ; that her clothes were not torn, except one sleeve of her dress ; that the crime of which defendant was convicted was committed in a house where the prosecutrix was with her younger sisters and brothers, one of them being fifteen years of age, another eleven, and another eight; that this matter was never talked over by her with them, and that she made complaint to her mother only directly after the offense, and that the only other party to whom she complained was a Mr. Stidger, and to him not until twenty months after the commission of the crime. Ordinarily it would have been necessary to call her mother and her sister Frances as witnesses for the state, who were said to have witnessed the crime; they were not called by the state, but by the defendant, and in testifying the mother denied that Alfaretta had ever made any statement to her, or that she had any knowledge of any improper relations between her daughter and the defendant, and the sister Frances denied the testimony of Alfaretta and Tase flatly and squarely.

We have purposely refrained from citing the testimony of the defense, and have embodied in this opinion and statement only the testimony of the state and those witnesses which the prosecutrix testified were either witnesses of the act itself, or to whom she made complaint shortly after its commission. (*The State v. Burgdorf*, 53 Mo. 65; *Dickey v. The State*, 21 Tex. App. 430; 3 Wharton & Stille's Med. Jur., § 689; Russell on Crimes, 690.)

We recommend that the case be reversed, and remanded for new trial.

By the Court: It is so ordered.

All the Justices concurring.