## THE STATE OF KANSAS V. WILLIAM H. HAMILTON.

No. 14,923.    (87 Pac. 363.)

### SYLLABUS BY THE COURT.

1. JURY AND JURORS—*Challenge for Cause—Burden of Proof— Service within a Year.* The burden rests upon the party interposing a challenge to a juror for cause to show that the cause exists. A juror's incompetency does not necessarily appear by proof that he has served within a year next preceding his examination. It must appear that he has served as a juror in a court of record within the year next preceding the selection of jurors for that year.

2. EVIDENCE—*Cross-examination of One's Own Witness—Surprise.* The extent to which a party may be permitted to cross-examine his own witness who proves to be hostile rests generally in the sound discretion of the court. Upon review the record shows no abuse of discretion.

3. STATUTORY RAPE—*Evidence and Verdict.* Evidence examined and held sufficient to support a conviction.

Appeal from Thomas district court; CHARLES W. SMITH, judge. Opinion filed October 6, 1906. Affirmed.

*C. C. Coleman,* attorney-general, and *Arch L. Taylor,* county attorney, for The State.

*Benjamin F. Endres,* and *Clement L. Wilson,* for appellant.

The opinion of the court was delivered by

PORTER, J.: Appellant was charged with the crime of statutory rape upon the person of Clara Hamilton, a child fifteen years of age. At the June term, 1905, of the district court of Thomas county he was convicted, and appeals.

The prosecuting witness is his own daughter. She swore to the complaint, but upon the trial when first called as a witness denied the truth of her former statements and asserted that the appellant was not guilty. The trial court permitted the attorney for the state to cross-examine her at great length, and upon her persisting in the denial of the truth of the charges her further examination was postponed until another witness was called, and she was, in the presence of the jury and at the request of the state's attorney, placed temporarily in a bailiff's custody. When recalled as a witness she still maintained that the charges against her father were false. Several times during the examination the court admonished her to tell the truth, and finally, upon the suggestion of the attorney for the state, placed her in the custody of the sheriff and adjourned the trial until the next day. At the same time the court expressed the belief that the child was under the influence of others, and threatened to have a prosecution begun against her for perjury and against others for subornation of perjury. The order placing her in the custody of the sheriff and these last suggestions of the court were made after the jury had retired. The following morning she was again placed on the stand and examined very briefly. Aside from two preliminary questions, she was asked only the following question on direct examination:

"Ques. I will ask you if at any time within the last two years, in Colby, Thomas county, Kansas, the defendant, William H. Hamilton, has had sexual intercourse with you? Ans. Yes, sir."

Upon cross-examination she admitted that she had

written a letter to her father immediately after his arrest containing the following statement:

"Mr. Pratt and Lawyer Taylor came up to our house and frightened me into making a false statement. I did not realize what I was saying. I was so frightened I did not know what I told them."

She stated, however, that this letter was written at the dictation of her grandmother, Mrs. James, who is the mother of the appellant. She was asked by the court why she had not testified to these facts when on the witness-stand the day before, and her answer was that Mrs. James and Mr. James had both said to her that if she told she "would have to go too."

The sheriff testified to a conversation with appellant soon after the arrest was made, as follows:

"He asked me if I thought he was guilty. I told him everything showed that he was guilty. He said, 'Well, my God, you don't think I am, do you?' 'Well,' I says, 'it looks that way, Billie.' 'Well,' he says, 'I am just standing under this to shield somebody else.' " The witness further testified that defendant said that when the right time came he would tell something. No further testimony was offered by the state. The defendant offered no testimony except his own, in which he stated he was not guilty, but rather than see his daughter punished for perjury he was willing to plead guilty.

Error is predicated upon the action of the court in permitting the extended cross-examination of the complaining witness, in ordering her into the custody of the sheriff over night, and in permitting her to testify afterward.

The proceedings were very unusual. The witness was fifteen years of age, intelligent, and had reached the seventh grade in the public schools. She had sworn to the complaint charging her father with this monstrous crime and then denied that there was a syllable of truth in the charge. Here was a situation where the exception to the rule that a party shall not be per-

mitted to cross-examine his own witness clearly applied. The extent to which the cross-examination under such circumstances should be permitted can, as a rule, best be left to the sound discretion of the trial court. (*The State v. Spidle,* 42 Kan. 441, 22 Pac. 620.) That court had every opportunity to observe the manner and appearance of the witness, the surrounding circumstances under which her examination in chief was conducted, the evident surprise of the prosecution by her changed attitude as a witness, and was, therefore, better able than this court to judge the extent to which, in furtherance of justice to the public and with due regard for the rights of the appellant, the state should be permitted to cross-examine its own witness.

The remarks and suggestions of the trial court during the examination, and in the presence of the jury, though somewhat irregular, were only the expressions of what must naturally have occurred to the mind of every juror, and we are not able to say, under all the circumstances, that the appellant was prejudiced thereby. If, as the court undoubtedly believed, this child, under the influence of her grandmother and other members of the family, who would naturally desire the truth concealed, had been suborned and cowed under threats into swearing falsely to conceal the disgrace and protect her father from punishment, and the reluctant truth was finally obtained from her, can it be said that the substantial rights of the appellant were thereby prejudiced?

The testimony against the appellant was far from strong. No reason is apparent why the state should have been content with resting its case almost alone upon the unsupported statement of a single witness, or why no attempt was made to prove by that witness some of the circumstances connected with the offense. If the intimations made so frequently by the county attorney when the prosecuting witness was first examined were true, the testimony of the physician and others who it was claimed knew certain facts quite rele-

vant to the case should have been offered. The trial
court, however, observed the manner and appearance
of the witnesses, and, with a knowledge of all the cir-
cumstances connected with the trial, approved the ver-
dict of the jury; and we should not disturb that verdict
except for substantial reasons, which a careful review
of the record fails to disclose. (*The State v. Hunter,*
50 Kan. 302, 306, 32 Pac. 37; *The State v. Mumford,*
70 Kan. 858, 860, 79 Pac. 669.)

We have examined the instructions given and find no
error.

Several of the jurors stated on their examination
that they had formed or expressed opinions as to the
guilt of appellant, but upon rigid inquiry by the court
each admitted that the so-called opinion was an im-
pression gained from rumor, and that he could and
would give the appellant a fair trial and be guided
solely by the evidence. We see no error in overruling
the challenges to these jurors.

At first glance a more difficult question arises in
reference to three other jurors who testified on their
*voir dire* that they had been called as jurors in a case
in the district court within a year preceding the term
of court at which the appellant was tried. Section
3795 of the General Statutes of 1901 reads as follows:

"The trustee of each organized township, and the
mayor of any city not included in any corporate limits
of any township, shall at his office during the month of
April of each year make a list of persons to serve as
jurors for the ensuing year, as hereinafter provided."

Section 3797 reads:

"In making such selections, each person who shall
have served as a juror in any capacity at any term of
court during the year next preceding such selection
shall be excluded from the list of jurors for the then
ensuing year; and if any such persons shall be selected
or drawn, it shall be the duty of the court to which
such jurors shall be summoned to strike the names of
such persons from the list of jurors; and it shall be
good cause of challenge to any juror that such juror

30—74 KAN.

shall have served as a juror in any court of record during the year next preceding such selection; and no juror called or summoned, who shall have so served during such preceding year, shall draw any pay for more than one day during the term of court to which he·shall be so summoned; and a list of the persons so selected shall be, immediately after such selection, certified by the officers making such selection to the county clerk of such county."

The words "during the year next preceding such selection" clearly mean the preceding year, counting back from the time of the making of the list, which was in April, 1904. Appellant's trial occurred at the June term, 1905. The jurors challenged for this cause stated that they had served as jurors in a certain fire case within the past year, which might have been true and still not render them subject to the challenge if that trial occurred, as it possibly might, at an adjourned term held after April, 1904. When the ruling complained of was made the court suggested that later the record showing the facts could be looked into, but with the record within easy reach no attempt was made to introduce it. The presumption is in favor of the competency of the juror, and the burden of showing that good cause exists for the challenge rests upon the one who makes the challenge. In the absence of this showing the challenges to these jurors were properly overruled.

It is claimed that the jury were permitted to separate without first being admonished. The record shows that at the noon adjournment the court said to the jury: "Be very careful not to hear anything about the case. Don't permit any one to talk in your presence about the case. Don't hear anything about the case whatever." The court at a previous adjournment had admonished the jury not to talk about the case among themselves, and while the admonition quoted is not in the words of the statute, as is always the better and safer practice, still, in connection with the previous admonition, it was not prejudicial error. At another

time, during a slight intermission, the jury were told that they were under the previous admonition of the court, which, under the circumstances, was sufficient. No objection was offered by appellant to the sufficiency of either of these admonitions, nor was the attention of the court called to these alleged errors by the motion for a new trial. The jury may have been during the entire intermission within the court room for all that appears by the record. (*The State v. Stackhouse,* 24 Kan. 445, 446; *The State v. McKinney,* 31 Kan. 570, 3 Pac. 356.)

The court sentenced appellant to be confined in the state penitentiary at hard labor for a period to be determined by the "pardoning board" of said penitentiary, instead of the "prison board." This was an irregularity which, if it were of sufficient importance, might require his being sent back to be resentenced; but it was not raised by the motion for a new trial nor by the motion in arrest of judgment, and would in no event authorize a reversal of the judgment. The judgment is affirmed.

All the Justices concurring.