STATE EX REL. STEVENS ET AL., RELATORS, *v.* McLEISH
ET AL., RESPONDENTS.

(Nos. 4,844 and 4,845.)

(Submitted April 6, 1921. Decided May 2, 1921.)

[198 Pac. 357.]

*Certiorari—New Counties—Board of County Commissioners—
Jurisdiction—Petitions—Notice of Hearing—Insufficient Pub-
lication—Time.*

New Counties—Creation—Board of County Commissioners—Jurisdiction
—Statutory Directions—Substantial Compliance Necessary.
1. The creation of new counties is a subject exclusively of legis-
lative cognizance and control; hence the board of county commis-
sioners having jurisdiction over the initiatory proceedings incident
to the creation of one must pursue the statute in all substantial
particulars.

Same—Notice of Hearing—Time—Insufficient Publication—Proceedings
Void.
2. *Held* on *Certiorari,* that publication of notice of hearing on
petitions for the creation of a new county required by Chapter 226,
Laws of 1919, in certain newspapers for at least once a week for
two weeks next preceding the date fixed for it, is jurisdictional,
and that therefore failure of publication in one of the papers
designated in the week immediately preceding the date of the hear-
ing was fatal to jurisdiction and rendered all subsequent proceed-
ings, including the election, invalid.

Same—Publication of Notice—County Clerk—Designating Newspaper
by Wrong Name—Effect.
3. Designation by the county clerk of a newspaper by the wrong
name, in which to publish notice of the date of hearing of peti-
tions for the creation of a new county, amounted to noncompliance
with the statutory direction in that regard.

Same—Publication of Notice—"Two Weeks Next Preceding"—Hearing—
Definition.
4. The requirement of Chapter 226, Laws of 1919, that notice of
the hearing of new county petitions shall be published "at least
once a week for two weeks next preceding the date. fixed for such
hearing" means two weeks immediately preceding the hearing.

Original proceeding for writ of *certiorari,* directed to A. E.
McLeish and others, constituting the Board of County Com-
missioners of Chouteau County, to annul proceedings had in
connection with the creation of Banner County. Writ issued.

4. Construction of requirement of publication once a week for
certain number of weeks, see note in **Ann. Cas.** 1917B, 209.

*Mr. Henry C. Smith,* for Relators, submitted an original and a supplemental brief, and argued the cause orally.

*Messrs. Norris, Hurd & Rhoades,* for Respondents, and for D. J. Hilger, Intervener, submitted a brief; *Mr. Edwin L. Norris,* argued the cause orally.

MR. JUSTICE COOPER delivered the opinion of the court.

On March 30, 1921, relators presented to this court an application for a writ of mandate and, in aid thereof, a writ of *certiorari,* addressed to the board of county commissioners of Chouteau county, requiring it to reconvene and make an order nullifying all of its proceedings had on and after the twenty-ninth day of November, 1920, attempting to create Banner county out of portions of Chouteau and Fergus counties. The writs were issued as prayed for, and returns made showing all of the proceedings had and done. They were treated as companion writs, consolidated, briefed, argued and presented together upon motions to quash, accompanied in each case by what respondents term an answer on the merits. The two petitions allege substantially the following facts:

The relators are qualified electors and resident taxpayers of Chouteau county and are now and always have been opposed to the creation of Banner county. The respondents are members of and compose the board of county commissioners of Chouteau county. Both relators voted at the general election of 1918 and are now here representing themselves and all other persons similarly situated and affected by the acts of the respondents. It also appears that on or about October 30, 1920, two petitions, one bearing the signatures of electors and taxpayers of Fergus county, and the other of electors and taxpayers of Chouteau county, were filed with the county clerk of Chouteau county, praying that Banner county be created out of territory embraced within those two counties; that neither of the relators signed the petition; that the area proposed to be taken from Chouteau county is larger than the

, territory to be taken from Fergus county; that on November 6, 1920, the county clerk of Chouteau county fixed November 29, 1920, as the date for hearing the prayer of the petitioners and all opponents thereto; and that he also designated the "River Press," a newspaper of general circulation, published at Fort Benton, in Chouteau county, the "Lewistown Argus," a newspaper of general circulation published at Lewistown, Fergus county, Montana, and the "Geraldine Review," a newspaper of general circulation published in the town of Geraldine, within the boundaries of the proposed new county, as the official newspapers for the publication of the notice, under the provisions of Chapter 226 of the Session Laws of 1919.

The petition further states that when the board of county commissioners met, in pursuance to the published notice, the affidavits of the publishers of the newspapers designated for the publication of such notice show that it was published in the "River Press" on November 10 and 17; in the "Fergus County Argus" on November 12 and 19; and in the "Geraldine Review," on November 11, 18 and 25; that the board of county commissioners met on the date fixed and as so noticed, November 29, 1920, and proceeded with the hearing, made an order proclaiming an election to be held on the twenty-ninth day of March, 1921, and directed notice thereof to be given, for the purpose of determining the question whether Banner county should be created or not; that the election was held and resulted in more than fifty-eight per cent of the vote being cast in favor of the creation of the new county; that the board now threatens to and will proceed to canvass the votes' cast at such election, declare the result thereof, and proceed by resolution to declare the new county created and established, and will cause a copy of the resolution to be filed in the office of the secretary of state, and perform such other acts and duties as are required by the Act in question, to create Banner county, irrespective of the irregularities men-

tioned and the irreparable injury to the citizens and taxpayers of the counties of Chouteau and Fergus.

The argument proceeded upon the assumption that the validity of the acts of the county board depended upon the question whether the notice had been published by the clerk as the statute requires. If we disregard technical defects in the manner in which the petitions were presented to this court, the two applications together present the question whether the statutory mandate regarding the publication of the notice has been followed.

The creation of new counties is a subject exclusively of [1] legislative cognizance and control. (*State ex rel. Koefod* v. *Board of County Commrs.*, 56 Mont. 355, 185 Pac. 147.) "It is purely statutory, and for every act of the board, justification must be found written in the statute in express terms, or necessarily implied." (*State ex rel. Jacobson* v. *Board of County Commrs.*, 47 Mont. 531, 134 Pac. 291.)

The Act makes it the duty of the *clerk* to fix the date of [2, 3] hearing, order the publication and designate the newspapers in which notice shall be published. No duty devolves upon the county board until the date fixed by the clerk for the hearing and publication of the required notice. As the board acquires no power to act by virtue of the mere filing of the petition, it seems to follow that the jurisdiction of the board in the premises is derived from that portion of the statute which declares that notice of hearing shall be given by publication in certain newspapers "at least once a week for two weeks next preceding the date fixed for such hearing." The purpose of this notice is manifest. The legislative assembly has provided for separate notices, by enacting that one notice shall be published in each of the old counties, and also one in the proposed new county, if there be a newspaper of general circulation published therein. Presumably the notice in the "River Press" was intended to bring home to the people of Chouteau county knowledge, actual or constructive, that on November 29 a hearing would be had before

the county board on a proposition to take away a part of their county; the notice in the "Argus" was designed to notify the people of Fergus county of the same thing; and that in the "Review" was intended to be a particular notification to the people within the boundaries of the proposed new county that such territory was sought to be erected into a new county. It therefore follows that publication in the "Argus" and in the "Review" was not any constructive notice to the qualified electors of Chouteau county. If an insufficient notice would suffice in Chouteau county, then we see no reason why an equally defective publication could not be given in Fergus county, and perhaps in the proposed new county as well, thus nullifying the provisions of the Act entirely, so far as notice is concerned. Neither do we think announcement by the clerk that the notice should be published in the "Lewistown Argus" was the statutory designation that notice should be published in the "Fergus County Argus." There was no such newspaper as the "Lewistown Argus" published, and hence the act of the clerk was not a compliance with the direction of the statute in that respect.

We regard the publication of the notice substantially in the manner pointed out by the Act itself, as an essential prerequisite to jurisdiction on the part of the county board. A departure from its commands amounts to a disregard of the legislative will. Publication of notice may be likened to constructive service of process in a judicial or *quasi*-judicial proceeding, without which the tribunal has no authority to proceed at all. "In proceedings for the creation of a new county the board of county commissioners is required to act as a *quasi*-judicial tribunal." (*State ex rel. Jacobson* v. *Board of County Commrs., supra,* at 47 Mont., p. 536, 134 Pac. 291.)

The statute provides that the notice "shall be published [4] at least once a week for two weeks next preceding the date fixed for the hearing." A week consists of seven consecutive days. (Rev. Codes, sec. 2030.) The two weeks, or

fourteen consecutive days, next preceding the twenty-ninth day of November, 1920, the date of this hearing, began on November 15 and ended on November 28. During that period there was but one publication of the notice in the "River Press," to-wit, on November 17. In the week next or immediately preceding November 29, there was not any publication. If we construe the statute to mean calendar weeks, the result is the same. The calendar week, next preceding November 29 began on Sunday, November 21, and ended with Saturday, November 27, and during that week the "River Press" did not publish the notice. The statute declares that the notice must have been published at least once in this week. In the case of *State* v. *Hamilton,* 74 Kan. 461, 87 Pac. 363, the supreme court of Kansas held that the words "during the year next preceding such selection (of the jury)" clearly meant the preceding year, counting back from the date of the making the list. See, also, *Lay* v. *Shores,* 112 Miss. 140, 72 South. 881, where the supreme court of Mississippi, in passing upon a similar point, used this language: "We are not permitted to inquire the reasons prompting the legislature to require the publication of the notice 'for three weeks next preceding the meeting'; we know that it is so, and the record shows that the notice does not square with the legislative requirement." In the case of *Jackson* v. *Guss,* 86 Kan. 280, 120 Pac. 353, the supreme court of Kansas held that a sale of school land, without giving the full twenty-eight days' notice required by the statute was a nullity. "Next" means "in the nearest time," "just after." (Century Dictionary; Webster's International Dictionary.) "Next preceding the election" means immediately preceding the election. (*Dowty* v. *Pittwood,* 23 Mont. 113, 57 Pac. 727.)

The basis of the whole proceeding is the notice of hearing before the county board; and if defective by reason of a departure from the statutory requirements, it may be set aside by a court of competent jurisdiction at the suit of an interested taxpayer brought for that purpose. Should the board

continue to act upon the assumption that it has established Banner county upon a valid foundation and proceed to provide funds from the public revenues of the county for the purpose of enabling it to function, its efforts may be resisted at the first step by judicial proceedings instituted to restrain it. An early decision in the present proceeding by this court may, therefore, prevent a multiplicity of actions and prolonged litigation between the board and the taxpayers opposing it. The publication of the notice is an antecedent step in acquiring jurisdiction, which neither the county board, this court, nor any other tribunal, other than the legislative assembly, may change, qualify or dispense with; and although the statute in other respects may have been strictly complied with, omission to publish the notice as the statute directs, renders all subsequent proceedings null and void.

When the mode of exercising any power is pointed out in the statute granting it, the mode thus prescribed must be pursued in all substantial particulars. The publication of notice of intention to create an improvement district is one of the three essential jurisdictional steps which must be taken in substantial conformity to the statute. (*Shapard* v. *City of Missoula*, 49 Mont. 269, 141 Pac. 544; *Johnston* v. *City of Hardin*, 55 Mont. 574, 179 Pac. 824; *McGillic* v. *Corby*, 37 Mont. 249, 17 L. R. A. (n. s.) 1263, 95 Pac. 1063; 20 Am. & Eng. Ency. of Law, 1142.) We do not, however, wish to be understood as holding that proceedings before the board of county commissioners in the creation of a new county are in all respects analogous to those creating special improvement districts in cities.

It must be conceded that if no notice was published at all, the attempt of the county board to create a new county would be wholly insufficient. Here it appears that the publication was not made for two weeks next preceding the date of the meeting of the board, as the statute requires. The statutory requirement as to the publication of notice of the hearing on the petitions for the creation of Banner county

not having been met as required, it is, in effect, the same as if no notice whatsoever had been given. Such notice being a jurisdictional requirement, notwithstanding the election held carried by a substantial majority, we are constrained to declare the order of the board of county commissioners of Chouteau county proclaiming an election to be held on March 29, 1921, and directing notice thereof to be given, null and void.

It is therefore ordered that the order of the board of county commissioners of Chouteau county calling the election in the matter of the creation of the proposed Banner county, and all subsequent proceedings based thereon, be, and they are hereby, annulled.

*Proceedings annulled.*

'ASSOCIATE JUSTICES REYNOLDS and GALEN concur.

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICE HOLLO-' WAY dissent.